## CAMPBELL et al. v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

### Division One, May 27, 1903.

1. **Negligence: CONTRIBUTORY: DEMURRER TO EVIDENCE.** Unless the only conclusion that can reasonably be drawn from the evidence is that the plaintiff was guilty of contributory negligence, a demurrer to the evidence should be overruled. It is only when the evidence is such that there can reasonably be no two opinions on the subject that the court should sustain such demurrer.

2. ———: **PLAINTIFF'S WITNESS: GUARANTEED VERACITY.** A plaintiff in an action for personal injuries, where one ground of the negligence is that there was no headlight on the car as it approached the crossing where the collision occurred, is not bound entirely by the testimony of his own witness who testified that she saw the car approaching. Whether she saw the car or not is still a question for the jury to decide.

Vol 175 mo—11.

3. ———: LOOK AND LISTEN: STREET RAILWAYS. The duty of one about to cross a railroad track to look and listen applies· to crossing street railways in cities, yet conduct that might well be regarded as negligence in one about to cross steam railroads in the country need not necessarily be so regarded in one about to cross a street railway.

4. ———: ———: ———: QUESTION FOR JURY: THINGS TO CONSIDER. It is the duty of the driver of a delivery wagon along a street in a large city of a dark and foggy night to look and listen for cars as he is about to cross a street railway, and sometimes it is his duty to stop in order the better to see and hear; yet it is not always incumbent on him to stop for that purpose. Whether he should do so or not in a given case depends on the circumstances, and if it is doubtful the jury are to judge of it. And in determining the fact, they should take into consideration who the, driver or pedestrian is, his age, condition, experience, the time, place and all the surrounding conditions.

5. ———: ———: ———: ———: CONSTRUCTION CAR. One thing to consider in such case is that the car which struck the driver was not a passenger car, but a construction car, whose outlines at night were not so easily seen, and whose unfamiliar appearance would not be readily recognized by one who did see it.

6. ———: ———: ———: ———: AGE OF PERSON INJURED. A boy sixteen years old, killed by a car while driving a delivery wagon over a street railway, is not to be judged as is a man of mature years. The conduct of such a boy is to be measured by the standard of an ordinarily prudent boy of that age.,

7. ———: HEADLIGHT: CONTRIBUTORY NEGLIGENCE: MATTER OF LAW. A driver on a delivery wagon has a right to expect that an approaching car on a street railway will have a headlight, and if he looks in both directions as he approaches the crossing and sees no car, and if he then concludes for that reason that no car is coming and drives on the track, and is injured, the court has no right to say as a matter of law that he is guilty of contributory negligence that bars his right to recover.

8. ———: ACCEPTANCE OF ORDINANCE: EVIDENCE: THEORY AT TRIAL. Where both sides have tried the case on the theory that it was necessary for plaintiff to show that defendant railway had agreed to accept general ordinances regulating the speed of street cars, neither party is in a position to question that theory, whether it was correct or not, and hence no error was committed in admitting in evidence an ordinance showing such acceptance by defendant.

9. Ordinances: PURPORTED AUTHORITY. The volume of revised ordinances which purports to be published by authority of the city,

according to the statute (sec. 3100, R. S. 1899) is admissible in evidence as far as applicable.

10. ————: REPEAL BY IMPLICATION: SPECIAL. A general ordinance provided that no street car shall be drawn at a greater speed than eight miles an hour, and a provision of the city charter provided that "no special or general ordinance, which is in conflict with general ordinances of prior date, shall be valid or effectual until such prior ordinance, or the conflicting parts thereof, are repealed by special terms." *Held*, that it was error not to permit defendant to introduce in evidence an ordinance which authorized it to run its cars on the part of the road where the accident occurred at twenty miles an hour, since such ordinance was not in effect an attempt to repeal the general ordinance by implication, but only the making of an exception to its operation. *Held*, also, that it was error to instruct the jury that defendant was guilty of negligence in running its cars at a rate in excess of twenty miles an hour.

11. Street Car: SPEED FROM SOUND ALONE. Unless a witness who testifies as to the speed of a car from its sound alone is able to give something more than a vague guess, the testimony should be excluded.

12. ————: APPEARANCE OF DANGER: NO EVIDENCE. Where the city ordinance requires the street car to stop on "the first appearance of danger" in the shortest time possible, an instruction on that theory can not be ruled out on the ground that plaintiff's testimony did not show that any one on the car ever saw the person approaching the track, if there is evidence on the part of defendant that the motorman did see him and did not stop the car in the shortest time possible. But although the motorman may testify that there was a headlight and that he could see down the track and to the line of the other track, yet if there was no evidence available to plaintiff that the motorman did not stop the car in the shortest time and space possible after discovering the person's danger, such instruction should be refused.

13. ————: QUESTIONS NOT IN ISSUE: INSTRUCTIONS. If there is no question in the case as to the liability of the street railway notwithstanding the negligence of the injured person, no such instruction on that theory of the case should be given.

14. ————: STOPPING TO LOOK AND LISTEN. Whether or not a boy sixteen years old, driving a wagon over a street paved with vitrified brick, of a dark, foggy night, should have stopped to look and listen for the approach of an irregular construction car, before crossing the track, the evidence being conflicting as to whether there was a headlight on the car, is a question of fact for the jury.

15. ———: LOOK AND LISTEN: SPECIFIC INSTRUCTION. The defendant
is entitled to a specific instruction to the effect that plaintiff can
not recover if the injured person did not look and listen for an
approaching car before attempting to cross the street railway, where
the evidence on that point is conflicting, and a failure to give
such specific instruction is not cured by another which directs a
verdict for the defendant if the jury find that the accident resulted
from the negligence of the injured person "in failing to use ordinary
care in driving across defendant's tracks or in failing to use
reasonable care to look out for the cars approaching on defendant's
tracks."

Appeal from St. Louis County Circuit Court.—*Hon. John W. Booth*, Judge.

REVERSED AND REMANDED.

*McKeighan & Watts* and *Robert A. Holland, Jr.*, for appellant.

The court erred in refusing to give the instruction in the nature of a demurrer to the evidence offered by the defendant at the close of plaintiffs' evidence in chief, and at the close of all the evidence. (a) The evidence of plaintiffs clearly showed that Howard C. Campbell was guilty of negligence that directly contributed to cause his death. Said evidence clearly showed that if said Campbell had looked in a westerly direction as he approached the tracks he could have seen the car at a distance of two hundred feet, even if there were no headlight on the car, and that if he had listened for the approach of the car he could have heard it when it was at least one hundred and thirty-five feet west of Whittier street. The law is well settled that if a person drives upon a street railroad track without looking and listening for approaching cars he is guilty of contributory negligence as a matter of law, and can not recover. Payne v. Railroad, 136 Mo. 534; Yancey v. Railroad, 93 Mo. 433; Kelsey v. Railroad, 129 Mo. 369; Lenix v. Railroad, 76 Mo. 86; Culbertson v. Railroad, 140 Mo. 35; Kreis v. Railroad, 148 Mo. 321; Maxey v.

Railroad, 113 Mo. 1.    (b)    The court erred in not giv-
ing said instruction in the nature of a demurrer to the
evidence because the plaintiff's own evidence showed
that Howard C. Campbell was guilty of contributory
negligence as a matter of law.    And plaintiffs did not
plead or prove that after plaintiffs' son was thus guilty
of contributory negligence, the defendant willfully,
recklessly or wantonly ran the car into his wagon.    In-
deed, there was no evidence that after the plaintiffs'
son was thus guilty of contributory negligence the mo-
torman could in anywise have avoided the collision.
The law is well settled in this State that where the
plaintiff in an accident is killed by negligence which di-
rectly contributes to his injuries, he can not recover
unless he pleads and proves that the defendant, after
the negligence on the part of plaintiff had been com-
mitted, recklessly and wantonly inflicted injury upon
him.    Boyd v. Railroad, 105 Mo. 371; Yancey v. Rail-
road, 93 Mo. 433; Watson v. Railroad, 133 Mo. 246; Da-
viess v. Railroad, 159 Mo. 1; Tanner v. Railroad, 161
Mo. 497; Sharp v. Railroad, 161 Mo. 214.

*Clinton Rowell, Joseph H. Zumbalen* and *Selden
P. Spencer* for respondents.

(1)    The demurrer to the evidence was properly
overruled.    Kenny v. Railroad, 105 Mo. 270; Lamb v.
Railroad, 147 Mo. 171; Gratiot v. Railroad, 116 Mo.
446; Weller v. Railroad, 120 Mo. 635; s. c., 164 Mo. 180;
Baker v. Railroad, 122 Mo. 533; Hutchinson v. Railroad,
161 Mo. 246; Drain v. Railroad, 86 Mo. 574; Church v.
Railroad, 119 Mo. 203.    (2)    There was no error in
giving plaintiffs' instruction A.    Said instruction was
based on the fourth clause of section 1275, Revised Or-
dinances 1892, which defendant had agreed to comply
with and observe.    Ordinance 19393, sec. 11.    (3)    It
was proper to give plaintiffs' instruction B, based on
the tenth clause of section 1275, Revised Ordinances

1892, and to refuse defendant's instruction 9, which declared that there was no liability on defendant for a violation of said ordinance. (a) The book of Revised Ordinances was admissible in evidence. R. S. 1899, sec. 3100; St. Louis v. Foster, 52 Mo. 513; City of Tarkio v. Cook, 120 Mo. 1. (b) It was proved that defendant had accepted said ordinance. Ordinance 19393, sec. 11. (c) The twenty-mile provision of ordinance 15954 is invalid and ineffectual because in conflict and inconsistent with section 1275, Revised Ordinances, and was therefore properly excluded. Charter of St. Louis, art. 3, sec. 26; State v. Clark, 54 Mo. 35; State v. DeBar, 58 Mo. 397. (4) There was ample testimony to justify the court in giving plaintiffs' instruction C. Authorities under point 1. (5) Defendant's sixth, seventh, tenth and eleventh instructions were properly refused. Sullivan v. Railroad, 117 Mo. 214; Weller v. Railroad, 120 Mo. 635; s. c., 164 Mo. 180. (6) It was not error to permit witness Burton to state his opinion as to the speed of the car, judging from the sound it made, since he properly qualified himself to express an opinion.

VALLIANT, J.—This is a suit for damages under section 2864, Revised Statutes 1899, for the death of plaintiffs' minor son which they allege was caused by the negligence of the servants of the defendant in running a car on its railway.

Defendant operates a street railway in St. Louis; the accident occurred at a point where defendant's tracks cross Whittier street. At that point defendant's tracks run east and west, and Whittier street north and south. Plaintiff's son, who was sixteen years old, was driving a grocery delivery wagon going south on Whittier street, shortly after six o'clock in the evening of November 3, 1899, when, as he was crossing defendant's south track, the wagon was struck by a car with such violence that he was thrown out and instantly killed.

The petition states that at that time there was an ordinance of the city which required the servants of defendant in charge of the car to keep a vigilant watch for vehicles and pedestrians either on the track or moving towards it, and on the first appearance of danger to such vehicles or pedestrians to stop the car in the shortest time and space possible, and that such cars after sunset should be provided with signal lights, and no car be run at a greater speed than eight miles an hour; it then states that the servants of defendant so negligently managed the car on this occasion as to cause it to strike the wagon and throw the plaintiffs' son therefrom and kill him. Then the petition specifies four acts as of negligence which it alleges defendant committed, to-wit: that there was no headlight, that the car was running twenty miles an hour, that the man in charge did not keep a vigilant watch and failed to stop the car in the shortest time and space possible on the first appearance of danger to the vehicle and that they failed to ring a bell on approaching the crossing.

The answer was a general denial, and a plea that the plaintiffs' son was negligent in that he drove on defendant's track without looking or listening for an approaching car and thereby contributed to the accident.

Reply, general denial.

The testimony for plaintiffs tended to prove as follows:

Defendant's tracks are laid in an alley that runs east and west between West Bell street on the north and Morgan street on the south. It is an unusually wide alley, being about sixty feet in width, the defendant owning a right of way twenty feet wide through the center. There are two tracks, the north track being used for the west-bound cars and the south track for the cars east bound. Whittier street runs north and south, intersecting the above-named streets, alley and

railroad tracks at right angles. This is in a residence
district in the western portion of the city. The next
street west of Whittier and parallel to it is Pendleton,
the next Newstead and the next Taylor avenue. The
railroad tracks are on a straight line and level from
Whittier street to Taylor avenue and beyond. There
is a roadway in the alley on the north side of the tracks
twenty feet wide, and one on the south side twenty-
three feet wide. In the angle made by the west line of
Whittier street and the north line of the alley is a two-
story brick stable. There were telegraph poles along
the line of the railroad, one of which was just west of
Whittier street. There was an arc light at the inter-
section of Whittier and West Bell streets, but no light
at the crossing of the tracks. The night was dark and
foggy. Whittier street was paved with vitrified brick,
which pavement extended down to the railroad tracks.
A wagon passing over the pavement made considerable
noise. The vehicle in which plaintiffs' son was driving
was an ordinary grocery delivery wagon, covered at top
and sides, except that on each side by the driver's seat,
it was open for a space of eighteen inches so that the
driver could see to the right and the left as well as to
the front. On this occasion he came from the north,
driving south on Whittier street, without stopping or
slacking his pace, crossed the north track and just as
he got on the south track, the wagon was struck by an
east-bound car and he was thrown out and instantly
killed.

It was not a regular passenger car, but a construc-
tion or repair car. It carried no headlight, but there
were lights inside, and an incandescent bulb in the hood
at the front of the car, with a reflection throwing the
light upward, designed to enable the operator to see the
wire overhead. The plaintiffs' witnesses variously es-
timated the speed of the car at twelve, fifteen and
twenty miles an hour. It did not slacken its speed
until it struck the wagon and it stopped about one hun-

dred and twenty feet east of Whittier street. Four of plaintiffs' witnesses heard the car when it was half way between Pendleton and Whittier streets and recognized by the sound that it was a car approaching rapidly; only one of these was in a position to see in that direction and she testified that she saw the car midway between Pendleton and Whittier streets. This witness was standing in the alley on the north side of the tracks at the back gate of the second house east of Whittier street so that she was about two hundred and fifty feet from the car when she first saw and heard it. Another one of these four witnesses was in the rear room of the same house, the windows closed; she heard but did not see it. Another was standing on the front porch of house No. 4206 West Bell street, which is the second house west of Whittier. It was about one hundred and thirty feet from where he stood to the north line of the alley, the house intervening. He was permitted to testify, over the defendant's objection, that judging from the noise of the car it was running twelve to fifteen miles an hour.

One of plaintiffs' witnesses who at the time of the accident was in the employ of the defendant and on this car, testified that it was his duty to put the headlight on the car and that he did so. The headlight was burning when the car left DeHodiamont, but whether it was burning when they reached Whittier street he did not know. This witness and another for plaintiffs' testified that the car running twelve to twenty miles an hour could be stopped in thirty-five to fifty feet.

Over the objection of defendant the plaintiffs read in evidence a duly certified copy of an ordinance of the city, No. 19393, approved June 10, 1898, authorizing the defendant to build and operate a branch of its road through a portion of Union avenue to Forest Park, the conditions of which had been duly accepted in writing by the defendant and one clause of which was as follows: "The St. Louis & Suburban Railway Company,

in accepting this ordinance, agrees to comply with the provisions of all general ordinances and charter provisions affecting street railroads that may be in force or which may hereafter be enacted and applicable to its entire line of railroad or any part thereof.''

Then over the objection of defendant, plaintiffs read in evidence from the volume of Revised Ordinances of 1892, section 1275 of Ordinance 17188, which provides that no car shall be drawn at a greater speed than eight miles an hour; that the motorman of each car shall keep a vigilant watch for all vehicles either on the track or moving towards it, and on the first appearance of danger to such vehicle the car shall be stopped in the shortest time and space possible; and that all cars after sunset shall be provided with signal lights.

At the close of the plaintiffs' evidence the defendant asked an instruction in the nature of a demurrer to the evidence which the court refused.

To the introduction of evidence over defendant's objections and to the refusal of the instruction asked, exceptions were duly saved.

The evidence for defendant tended to show that the car was running ten or twelve miles an hour, that the headlight was burning and continued to burn until the lamp was broken in the collision; that the gong was sounded at a point sixty feet before reaching the street; that the motorman as he approached Whittier street had taken the slack out of the brake, which tends to slacken the speed and place the car under control; on approaching within six or eight feet of the street and seeing nothing on the crossing he let off the brake and then for the first time saw the horse on the west-bound track; he immediately set the brake and reversed the power, but the reverse action did not take effect and the collision resulted; the car went sixty or seventy feet east of Whittier street before it stopped. The headlight did not illumine the whole street but only to the west-bound track. When the motorman let go the brake there was nothing

in sight.    When the horse came in view it was not more than fifteen feet from the car and was going quite fast. The space within which a car could be stopped, going as this was, was sixty to ninety feet.

Defendant offered in evidence ordinance No. 15954 entitled, ''An ordinance authorizing the St. Louis & Suburban Railway  Company to acquire, construct and maintain a  double-track  passenger  railroad  on, along and across  certain  streets, alleys and  city blocks in the city of St. Louis,'' etc., approved February 6, 1891.

This is the ordinance under which the defendant had acquired and was operating this part of its railway when the accident occurred and it authorized the defendant to run its cars on that part of its road at a rate of twenty miles an hour.   Plaintiffs'  objected to the evidence on the ground that it was invalid in so far as it essayed to authorize defendant to run its cars at the rate of twenty miles an hour in the face of the general ordinance in evidence limiting the speed of cars to eight miles an hour, in violation of section 28, article 3 of the city charter, which provides that ''no special or general  ordinance, which is in  conflict or inconsistent with general ordinances of prior date, shall be valid or effectual until such prior ordinance, or the conflicting parts thereof, are repealed by express terms.''   The court sustained the objections and defendant excepted.

The case was submitted to the jury on instructions which, together with other instructions asked and refused, will be hereinafter considered, exceptions thereto having been duly saved.   The result of the trial was a judgment for plaintiffs for $5,000, from which defendant appeals.

I.   The first question is, did the court err in refusing the instruction in the nature of a demurrer to the evidence?

The argument in support of that instruction is that the plaintiffs' evidence shows that the deceased was himself guilty of negligence which contributed to the accident. From the facts and circumstances shown by the plaintiffs' evidence the conclusion might reasonably be drawn that the deceased was guilty of such negligence, but unless that is the only conclusion that can reasonably be drawn from those facts and circumstances, the demurrer to the evidence was properly overruled. If the evidence was such that there could reasonably be no two opinions about it, then its effect should have been declared by the court as a matter of law, otherwise, it was a question of fact for the jury. [Gratiot v. Railroad, 116 Mo. 450; Weller v. Railroad, 120 Mo. 635.]

That the boy could have seen the car coming if he had looked, may be inferred from the testimony of Annie Pierson, the witness for plaintiffs who stood at the back gate of the house numbered 4188 West Bell street. She was the only one of the plaintiffs' witnesses who was in a position to see it, and she testified that she saw it when it was midway between Pendleton and Whittier streets and heard it also, and that it had no headlight. She was east of Whittier street and farther from the car than the boy was after he came into the alley clear of the stable, and if there were any telegraph poles to obstruct his view they would have obstructed her view also. Then there was the testimony of three other witnesses for plaintiffs who although they were not in positions to see, yet testified that they heard the car coming and recognized what it was. There is room to suspect that Annie Pierson might have been mistaken as to having seen the car if, as she said, it had no headlight, and if, as all the witnesses said, it was a dark foggy night. And yet it is not improbable that she did see it, because she had been standing there ten minutes, her eyes had become accustomed to the darkness, and

she may have recognized the car by other lights than the headlight. Whether she saw the car or not was a question for the jury. The plaintiffs were not bound entirely by her testimony on that point.

It was incumbent on the boy to have used his eyes and ears before driving on the track, and if all that these witnesses said was true he would have seen or heard the car if he had stopped and looked and listened. Whilst it is the duty of one under such circumstances to look and listen, and sometimes it is his duty to stop in order the better to see and hear, yet it is not always incumbent on him to stop for that purpose; whether he should do so or not in a given case depends on the circumstances, and if it is doubtful the jury are to judge of it. In this instance the boy did not stop, and whether he looked or listened we can only judge by inference. It may be that he both looked and listened, but that he was deceived by the fact, if it was the fact, that there was no headlight, and that his listening was rendered ineffectual by the noise of his own wagon rattling over the vitrified brick pavement. It has often been said that a man approaching a railroad with the purpose of crossing it is chargeable with the duty to himself of looking and listening for a train. There is nothing technical about that rule; it is the dictate of common sense, and one's conduct in relation to it must be judged with common sense. What the law requires is the exercise of that degree of care which such persons of ordinary prudence under like circumstances usually exercise. To determine in a given case whether or not such care has been exercised, the triers of fact must consider who the person is, his age, condition, experience, the time, place and all the surrounding conditions. The most of what is said in our books on the subject of the duty of one about to cross a railroad track to look and listen, is said in cases of crossings of steam railroads in the country, but the principle applies also to crossings

of street railroads in cities, yet conduct that might well be regarded as negligence in the one case need not necessarily be so regarded in another. The noise of an approaching train on a steam railroad in the country is more easily heard and distinguished for what it is than is the noise of a street car, which is often undistinguishable in the roar of the city so that a jury in the one case might well say that the person did not use his sense of hearing because if he had listened he could not have failed to have heard and recognized the noise of an approaching train, while in the other they might reasonably conclude that the fact that he did not seem to hear and recognize the noise of an approaching street car did not conclusively show that he was negligent in the matter of listening. The triers of the fact must decide that question under the peculiar circumstances of the particular case in hand.

A fact to be borne in mind in this case is that this was not a passenger car, whose familiar appearance would be at once recognized by one used to seeing street cars, and for the like of which one would at a crossing naturally be on the lookout; but it was a construction car, whose outlines at night were not so easily seen, or if seen, recognized for what it was. Therefore, in passing on the question of whether the plaintiffs' son was negligent in failing to see this car, we must remember that it was not such an object in appearance as one looking out for a car would expect to see and that it is possible that through the darkness he might have seen this object without recognizing what it was.

There is another important fact to be taken into consideration in passing on the question of contributory negligence in such case; that is the age and condition of the person whose conduct is under inquiry. Here was a boy sixteen years old, old enough to be held accountable for his acts, but not to be judged as we would judge a man of mature years. The question

is, not what would an ordinarily prudent man of mature years have done under like circumstances, but what would an ordinarily prudent boy of sixteen years have done under like conditions? Care and prudence increase with that experience which years of maturity bring, but do not come by intuition to a boy in whose veins the blood of youth is leaping and to whom danger is a pleasant incentive. Reasonable men considering the case might construe the conduct of a mature man to be inconsistent with the care that should be expected of him, and therefore adjudge him guilty of negligence, yet construe the same conduct in a boy of sixteen years as nothing more than was to be expected of one of his age.

We do not mean to say that a boy sixteen years old is to be excused when he fails to exercise that degree of care to be expected of an ordinarily prudent boy of that age, but we mean that he is to be measured by the standard of an ordinarily prudent boy, not by that of an ordinarily prudent man of mature years. [Beach on Contributory Neg. (3 Ed.), sec. 216; 7 Am. and Eng. Ency. of Law (2 Ed.), 405; Plumley v. Birge, 124 Mass. 57.]

In this case the boy had a right to expect that there would be a headlight on any car on that road, and if he looked in both directions as he approached the tracks and saw no headlight, and if he then concluded for that reason that there was no car coming and drove on the track, the court had no right to say as a matter of law that he was guilty of contributory negligence. We do not mean to say that he was not guilty of contributory negligence or that the jury would not have been justified in finding him guilty, but we mean that men might reasonably differ about it and, therefore, it was for the jury to say whether under all the circumstances he was or was not guilty.

The court did not err in overruling the demurrer to the evidence.

II.   The court did not err in overruling the objection to the admission in evidence of ordinance No. 19393.   Both parties tried the case on the theory that it was necessary for the plaintiffs to show that the defendant had agreed to be bound by the ordinances of the city governing the running of street cars before it could be held liable for a violation of the same;. therefore, whether that is a correct theory or not,. neither party is in a position to question it in this case.   That ordinance was relevant evidence if it was necessary for the plaintiff to make such proof.   The. objection made by defendant was that it related only to that branch of defendant's road which was named in the ordinance.   Whilst the license conferred by the ordinance related only to the branch therein named,. yet that license was made the consideration for which the defendant agreed to be bound by all the general ordinances and charter provisions in relation to street railroads then in force or thereafter to be enacted "applicable to its entire line of railroad. or any part thereof."   Therefore, if it was necessary for defendant to agree to obey the law before it would become binding on it, there was such agreement based on a. valuable consideration and made applicable not only to the branch authorized in the ordinance, but to defendant's entire line.

The objection to the reading in evidence of section 1275, article 6, of ordinance 17188, from the volume of Revised Ordinances, was also properly overruled.   That volume purported to ` be published by authority of the city, and was admissible in evidence under section 3100, Revised Statutes 1899.

III.   But it was error to have sustained the plaintiff's objection to ordinance 15954 offered in evidence by defendant.   That ordinance authorized the defendant to run its cars on the part of its road where this accident occurred at twenty miles an hour.   The objection was that the ordinance was invalid under

section 28, article 3, of the city charter, hereinabove quoted, because in conflict with the general ordinance above mentioned, which limited the speed of street cars to eight miles an hour, the general ordinance not being expressly repealed. That point has been decided by this court in Ruschenberg v. Railroad, 161 Mo. 70, contrary to the plaintiff's contention. It was in that case decided that a similar ordinance, relating to a portion of the road of another street railway company in the city, was not in effect an attempt to repeal the general ordinance by implication, but only the making of an exception to its operation, leaving the ordinance in full force as a general rule. That is a correct construction of the ordinance and of the charter provision.

IV.   One of the plaintiff's witnesses, standing on the front porch of his residence at No. 4206 West Bell street, in which position he was about one hundred and twenty-five feet from the alley, with the house intervening, was permitted to give his opinion as to the speed of the car judging alone from the noise it made. He said it was running between twelve and fifteen miles an hour. It was not claimed that he had ever made any particular study of the subject, or that he had even ever been in the business of operating street cars, but he had for twenty years or more the common experience of a city man traveling on street cars.

Long training and study make men so proficient in particular subjects that they sometimes really know more than to the casual observer seems possible, and therefore we ought to hesitate to pronounce as impossible the possession of such knowledge when it is claimed with a fair show of reason. But when very unusual technical knowledge is claimed, the party offering the evidence ought to be able to show the court that such attainment is practicable by experience and study, and that it is so recognized in the par-

Vol 175 mo—12.

ticular trade or science.  There is no sound more familiar to the ears of a city man that that made by a street car in motion, and one may by the sound form some idea as to whether the car is moving fast or slowly, but to the man of common experience the idea is very indefinite.  When such evidence is offered, the court in the first instance must pass on the question of the qualification of the witness to give an opinion, and unless the court is satisfied that the witness is really enabled to give something more than a vague guess, it ought to rule the evidence out as not worthy to influence a verdict.  The objection to this evidence ought to have been sustained.

V.  For the plaintiff the court instructed the jury that as required by the city ordinance the defendant's motorman "was bound to keep a vigilant watch for persons on foot and for vehicles either upon its track or moving towards it, and upon the first appearance of danger to such person or vehicle said motorman was bound to stop the car within the shortest time and space possible," and that if he failed to do so he was guilty of negligence, and if such negligence caused the accident the defendant was liable, provided the deceased was himself exercising ordinary care.

Appellant contends that this instruction was erroneous for two reasons: first, that defendant had not agreed to be bound by the ordinance; second, that there was no evidence that the motorman did not keep a vigilant watch or that he did not stop the car in the shortest time and space possible upon the first appearance of danger.

What has already been said in paragraph II of this opinion disposes of the first of these objections.  The second objection, however, is more serious.  The plaintiffs are in the position of saying that the driver of the wagon could not see the car because the night was dark and foggy, and there was no headlight.  The motorman was in no better position to see the wagon

than the driver was to see the car; the same darkness which hid the one hid the other. If the telegraph poles obstructed the view of the driver they were there to obstruct the view of the motorman also.

Annie Pierson said she saw the car but did not see the wagon until it was struck. She was in a better position than the motorman was to see the wagon. One of the plaintiff's witnesses, Schira, said that the motorman could see a wagon on Whittier street when he was one hundred and fifty feet west. But that witness did not come on the scene until after the accident had occurred, and what he said was only his opinion on a subject which, from aught that appears, he knew no more about than any one of the jurors trying the case. Plaintiffs insist that it was a dark foggy night and there was no headlight on the car. If those are the facts, then the only evidence that the motorman failed to keep a vigilant watch was the failure to have a headlight to enable him the better to see; for a man can not be said to keep a vigilant watch if he lets his lamp go out. But if it was dark and there was no headlight, and he could not see the wagon, what appearance of danger was there for him to guard against by stopping the car in the shortest time and space possible? The ordinance does not require the motorman to stop the car on the first appearance of a vehicle approaching the track, but on the first appearance of danger; there must, therefore, be an appearance of danger before the mandate of the ordinance to stop the car is applicable. We are not now discussing the question of negligence in running a car in the dark without a headlight across a public street, but we are limiting our attention at present to the requirements of this ordinance.

If the plaintiffs be limited to their own testimony and to their own theory of a dark night and no headlight, there was no foundation in the evidence for the instruction now under discussion. The only hypoth-

esis upon which that instruction can rest is that there was a headlight as the defendant's witness testified there was. The motorman testified that the headlight was burning and that it threw the stream of light down the track on which he was moving, and enabled him to see the wagon on the north track, but that the light extended no farther than that track. He also said that as soon as he saw the wagon he threw on the brake and reversed the motor, but that it failed to take effect. If that testimony is true then he was not guilty of violating the ordinance for he did all that he could do in the emergency. But the jury were the judges of the weight to be given his testimony; if they credited part of his testimony and discredited part, they were acting within their province. And so it was with the plaintiff's evidence; the jury were free to believe and to disbelieve it as their judgment dictated. There was evidence for the plaintiffs that this car when going at the speed it was, could have been stopped with the appliances at hand, in a space of thirty-five to fifty feet. The defendant's evidence was that it required sixty to ninety feet. Plaintiffs' evidence was that the car ran 125 or 130 feet east of Whittier street before it stopped; the evidence of defendant was that it went only sixty or seventy feet east of the street. If there was a headlight and if the car could have been stopped in thirty-five to fifty feet, and it was not stopped until it went 125 or 130 feet beyond the east line of the street, those facts furnished the foundation for an argument that the motorman did not stop in the shortest time and space possible after he saw the danger. To build a case on that theory, however, the plaintiffs must abandon their position in regard to there being no headlight, and fall back on the defendant's evidence which tends to show that there was a headlight. But the plaintiffs can not abandon their first position for the reason that they barely escaped being forced to a nonsuit on the theory that there was no headlight. If

there was a headlight the boy could not have failed to have seen it if he looked, and if he saw it but did not heed it, or if he did not see it, because he failed to look, he was guilty of negligence.

There was no evidence available to the plaintiff, to support the hypothesis that the motorman failed to stop the car in the shortest time and space possible on the first appearance of danger. It was error, therefore, to have given that instruction.

VI. The second instruction given for plaintiff was based on the general ordinance which forbids the running of street cars at a greater speed than eight miles an hour; it instructed the jury that if the car was being run at a greater speed than eight miles an hour, the act was negligence.

The giving of that instruction was error, for the same reason given in paragraph III of this opinion holding that the court erred in sustaining the objection to the ordinance allowing defendant to run its cars on that part of its road twenty miles an hour. From this it follows also that it was error to have refused defendant's instruction 9 which was the contrary to plaintiffs' second instruction.

VII. The third instruction for plaintiffs is that the burden of proving negligence on the part of the deceased was on the defendant and submits that question to the jury in unobjectionable form. The objection appellant urges against it is that the evidence for plaintiffs, as well as that for defendant, shows so unquestionably that the deceased was guilty of negligence the court should have so peremptorily ruled and have taken the case from the jury. We have discussed that question in the first paragraph of this opinion, and for the reason there shown it was not error to have given plaintiffs' third instruction.

VIII. The court refused the following instruction asked by the defendant:

"6.   The court instructs the jury that if they believe from the evidence that Howard C. Campbell was driving south on Whittier street in a wagon which had no light, and that said wagon and the horse drawing the same could not have been discovered by said motorman in the exercise of ordinary care, in time to avoid a collision, after said wagon or horse came within range of the car—that is to say, near enough to the track to be in danger of being hit by the car, then your verdict should be for the defendant."

That instruction would exonerate the defendant notwithstanding the boy may have been misled into danger by the neglect of the defendant to have a headlight on its car and notwithstanding the fact that the failure of the motorman to discover the danger may have been caused by the absence of a headlight.  The instruction was properly refused.  The eighth instruction asked by the defendant has the same defect and was properly refused.

IX.   The court refused the following:

"7.   The court instructs the jury that if you believe from the evidence that when the dangerous position of Howard C. Campbell or of his wagon or team could have been discovered by the motorman by the exercise of ordinary care on his part, the car which struck said wagon was running at such a rate of speed that the said motorman in charge of said car could not stop the said car in time to avert a collision with said Campbell or his said wagon or team, by the exercise of ordinary care on the part of said motorman, and the use of the appliances at his command, then it is your duty to find a verdict for the defendant, even though you may believe from the evidence that the car which struck the wagon was running, at the time of the collision, or immediately before that time, at the highest rate of speed mentioned by any witness."

If there had been any question in this case as to the liability of the defendant notwithstanding the neg-

ligence of the deceased, that would have been a proper instruction, but under the evidence no such question arose. The instruction was therefore properly· refused.

X.   The court refused the following:

"10.   The court instructs the jury that even though they believe from the evidence that Whittier street at and about the place where the collision occurred between  the defendant's car and the wagon and horse driven by the deceased was paved with vitrified brick, and that by reason of that character of pavement the horse and wagon driven by the deceased made such a noise when passing over the same that the deceased was unable to hear an approaching car while his horse and wagon were in motion, yet the jury are further instructed that it was then the duty, under such circumstances, of the deceased before entering upon defendant's track to stop his horse and wagon so as to be able both to listen and to look for an approaching car, and to hear the noise of the same, if the jury believe from the evidence that the car in question made a noise that would enable him to hear it if the deceased had stopped and listened for the same; and if the jury further believe from the evidence that by so stopping his horse and wagon he could have heard the approaching car before going upon the defendant's track, and in time to avoid a collision, but that he failed to do so, but upon the contrary, went upon the track without stopping his horse and wagon for the purpose of listening for an approaching car, then in that case the jury are instructed that such conduct on the part of the deceased was negligent and the verdict of the jury should be for the defendant."

The question whether or not ordinary care required a person about to cross a railroad track to stop the better to see and hear, is like the question whether or not the plaintiff in a given case was guilty of con-

tributory negligence; it is sometimes a question of law and sometimes a question of fact. Sometimes there can be no two reasonable opinions about it, then it is the duty of the court to decide it as a matter of law; but sometimes it is doubtful, then it should be left to the jury.

There is no doubt but that prudence required one in the condition of this boy to stop, and if he had stopped the probabilities are that he would have at least heard the car. But the question is, what degree of prudence required him to stop? The standard that he is to be judged by is that degree of prudence that is reasonably to be expected of a sixteen-year-old boy, and, in this case, the question of whether there was or was not a headlight to warn him was to be considered in determining whether he did or did not exercise that degree of prudence when he failed to stop. Whether, therefore, the degree of prudence with which he was chargeable demanded that the boy in this case should have stopped to look and listen, was a question of sufficient doubt to be left to the jury, and the court therefore did not err in refusing the instruction which declared it to be his duty as a matter of law to do so, and negligence if he did not.

XI. The court refused the following:

"11. The court instructs the jury that if they believe from the evidence that Howard C. Campbell drove upon the track of defendant's line on Whittier street without looking and listening for an approaching car on said track, and that if said Howard C. Campbell had looked and listened for an approaching car before entering upon said track, he could have seen or heard the east-bound car approaching on the defendant's track, then Howard C. Campbell failed to exercise ordinary care in so driving upon said track, and his said failure to look and listen was negligence on his part, and your verdict should be for the defendant."

It certainly was the duty of the driver of the wagon to look and listen, and there was sufficient in the evidence to raise a question if he did either. The instruction was probably refused on the idea that the same hypothesis was presented in instruction numbered 5 given for the defendant, which directed a verdict for the defendant if the jury should find that the accident resulted from the negligence of the deceased "in failing to use ordinary care in driving across defendant's tracks or in failing to use reasonable care to look out for the cars approaching on defendant's tracks." But the defendant was entitled to the more explicit instruction on this point. The court erred in refusing that instruction. Instruction 12 refused is but a duplicate of instruction 11.

For the errors above mentioned the judgment is reversed and the cause remanded to be retried in accordance with the law as herein declared. *Brace, P. J.,* concurs; *Marshall, J.,* concurs in result; *Robinson, J.,* absent.