WILLIAM LYTER, Respondent, v. WALKER D. HINES, Director General of Railroads, Appellant.

Springfield Court of Appeals, August 20, 1920.

1. RAILROADS: Automobile Driver With Obstructed View Held Guilty of Contributory Negligence in Failing to Look. Where plaintiff, injured in a collision between defendant's train and his own automobile, drove 164 feet, with no attempt to look, when he knew there were at least two obstructions between the point at which he had looked and the crossing, he was negligent, since his duty to look was continuous.

2. ———:Automobiliie Driver's Failure to Listen Held Contributory Negligence. Where plaintiff, injured in a collision between his automobile and defendant's train, could not see the track after leaving a point 164 feet therefrom, it was his duty to listen, and, if necessary to make listening effective, to stop, and where he made no effort to hear the train, although he knew he was approaching danger, he was negligent as a matter of law.

Appeal from Circuit Court of Stoddard County—*Hon. W. S. C. Walker*, Judge.

REVERSED.

*W. F. Evans* and *Ward & Reeves* for appellant.

(1) A railroad crossing is a dangerous place, and is itself a signal of danger. A traveler approaching it is imperatively required by law to look carefully in both directions, at a convenient distance from the crossing and where looking will be effective, before venturing upon it, if, by looking, a train could be seen. And the duty to look is a continuing one until the crossing is reached. Not only is he required to look, but also to listen. He must not venture blindly upon the track without first using his senses of hearing and sight. And if for any reason his sight is obstructed that is all the more reason for a

greater exercise of his sense of hearing; and in the case at bar plaintiff's own evidence shows that he failed in this behalf, and the demurrer should have been sustained. Osborne v. Railway, 179 Mo. App. 245, 256-260; Faris v. Railway, 167 Mo. App. 392; Burge v. Railway, 244 Mo. 76, 94; Green v. Railway, 192 Mo. 131. (2) "It is always a person's duty to look and listen when possible before entering on a railroad crossing; and when stopping is essential to make looking and listening effectual, then stopping is necessary." Underwood v. Railway, 182 Mo. App. 262; Moore v. Railway, 157 Mo. App. 65; Campbell v. Railway, 175 Mo. 161; Klingensmith v. Railway, 209 S. W. 304; Steppe v. Railway, 207 S. W. 731; McQuitty v. Railway, 196 Mo. App. 450; Hook v. Railway, 162 Mo. 584. (a) "The duty of a traveler upon a highway in approaching a railroad crossing, to use all reasonable precaution to ascertain the approach of the train, and to avoid injury by them is well settled law, not only in this court, but perhaps of all the courts of this country. This rule imperatively requires him to look carefully, in both directions, at a convenient distance from the crossing, before venturing upon it, if, by looking, a train could be seen. The duty will not be performed by attempting to look only from a point at which the view is obstructed. The duty is a continuing one until the crossing is reached. If there is a point between the obstruction and the track which gives opportunity to see, it is the duty of the traveler to look." Kelsay v. Railway, 129 Mo. 382; Tannehill v. Railway (Mo. Sup.), 213 S. W. 821. (3) "If the view is so obstructed that the traveler cannot see the approaching train, he should carefully listen, but he must use his senses and it is not sufficient that he look where the view is obstructed, but he must also listen, and listen carefully." Schmidt v. Railway, 191 Mo. 215; Mitchell v. Railway, 122 Mo. App. 58. (4) "A railroad crossing being itself a warning of danger, no one has a right to heedlessly enter upon such danger relying upon the person running the approaching train to give him warning of that approach without himself taking every reasonable precaution to inform himself as to such an approach-

ing train." Underwood v. Railway, 182 Mo. App. 252.
(a) "And while in certain cases it is said that a person
about to cross a railway has a right to presume that the
statutory signals will be given, it is only where the per-
son is paying attention, and can neither see nor hear
anything indicating that a train is coming, that he can
assume, without negligence, that, if one' were coming,
the signals would be given." Osborne v. Railway, 179
Mo. App. 257; Donahue v. Railway, 91 Mo. 363; Weigman
v. Railway, 223 Mo. 719. (5) "The testimony of wit-
nesses that they did not hear the signals is not negative
proof that the whistle was not blown and the bell not
rung, and has no probative effect. And against direct.
and positive proof that such signals were made, the de-
murrer should be sustained." McGrath v. Transit Co.,
197 Mo. 97, 105; Underwood v. Railway, 182 Mo. App.
265; Armstrong v. Railway, 195 Mo. App. 83. (6) It
was error for the court to permit plaintiff's attorneys in
their argument to make statements of the law. The law
applicable to the case, as far as the jury is concerned,
can only be given to the court in writing, and either party
desiring law on any other question it must be put in
writing and presented to the court, and by the court
given, before counsel can give it to the jury, as law in
the case. Sec. 1987, R. S. 1909; Dean v. Chandler, 44 Mo.
App. 338, 343; State ex rel. v. Edwards, 35 Mo. App. 685.
(7) Instruction No. 1 given for plaintiff is erroneous as
follows: (a) (Abs. 88) : Said instruction which says, "and
if you further find that said automobile was then and
there injured or destroyed by the train, and that said
automobile was so injured or destroyed, and plaintiff
was so injured, as the result of the negligence of defend-
ant in running and operating said train," assumes that
defendant was negligent in operating the train in ques-
tion. Davis v. Metropolitan St. Ry. Co., 185 S. W. (Mo.
App.) 1170; Neas v. Railway, 138 Mo. App. 484; Haynor
v. Light, etc., Co., 129 Mo. App. 691; Wilkerson v. Eilers,
114 Mo. 252; Stone v. Hurd, 94 Mo. 475. (a) Said in-
struction submits in the disjunctive three grounds of
negligence and directs a verdict for plaintiff if the jury

finds either has been established, towit, (1) train running at a high, reckless and dangerous rate of speed, or, (2) at a rate of speed prohibited or forbidden by the City ordinance, or, (3) because the defendant did not ring the bell or sound the whistle as the train approached the crossing. There was no proof on either of these, especially upon the failure to ring the bell or sound the whistle, and an instruction directing a verdict on either of the several charges of negligence, some of which are not proven, and no testimony on, is reversible error. Armstrong v. Railway, 195 Mo. App. 89; Sparkman v. Railway, 191 Mo. App. 469; Allen v. Lbr. Co., 171 Mo. App. 492; Roseman v. United Rys. Co., 197 Mo. App. 337.

*J. L. Fort* and *K. C. Spence* for respondent.

No Brief filed by respondent.

FARRINGTON, J.—Plaintiff sued to recover for personal injuries to himself and destruction of his automobile caused by collision with a locomotive engine on a public crossing in Bloomfield. The cause was tried to a jury, resulting in a verdict and judgment in favor of plaintiff for $3000, from which judgment defendant appealed.

Plaintiff charges that defendant was negligent in the operation of the train in failing to keep a lookout on and over the street crossing, and in failing to ring the bell or sound the whistle as required, and in running the train at an excessive rate of speed of form 25 to 40 miles an hour in violation of a city ordinance. The answer was a general denial and a plea of contributory negligence.

Plaintiff was injured and his automobile destroyed when he attempted to cross what is designated in the record as the mill or switch track running some distance south from the main track near the depot in Bloomfield. Prairie street, on which plaintiff was injured, runs east and west and intersects the mill track at right angles.

The mill track extends south from the main track some half a mile, but deflects a little southeast about six hundred feet south of the Prairie street crossing. The crossing is a short distance east and south of the depot. The mill track is laid in a valley so that one coming from the east to the west on Prairie street, as was plaintiff, independent of other obstructions, will not be able to see a train south of the crossing until the crest of the ridge is reached, which point is 164 feet east of the center of the track at the crossing. Between the 164 feet point and the crossing are two buildings. Twenty-five or thirty feet south of the main traveled part of Prairie street, and six or eight feet from the east rail of the track is a' grain warehouse about eighty feet long, thirty feet wide and twenty-five feet high. About thirty feet east of the warehouse, ·and about twenty feet south of the street there is a small building about eighteen or twenty feet square. Between the warehouse and the small building, but near the southeast corner of the warehouse there was a clump of two or three small trees. At the time of plaintiff's injury, November 25, 1918, there were some corn stalks to the' south of Prairie street and between the 164 foot point and the crossing. Plaintiff at the time of his injury was engaged in driving a Ford service car, with all the curtans up except the front curtain on the right, and the wind shield was down. Plaintiff says, however, that he could see through the windows in the curtains as well as if he had had the top down. Plaintiff met the 10:20 a. m. train and secured a passenger for Dexter. This passenger stopped for a few minutes up town in Bloomfield, and plaintiff was returning to the depot to meet the 11:10 train. "I started back to meet the 11:10, and after I made the turn on Prairie street going west, when I came to where I could see the railroad track—I knew the Campbell train was in—I looked as far as I could see up the track and I couldn't see no train or hear any train or see the smoke of it, I judge I was driving at about eight' or ten miles an hour and I was right

on the track when I was struck.'' Plaintiff says that he was 164 feet from the crossing at the time he looked south for a train. That then he could see down to where the track made a slight curve to the southeast, which point is about 600 feet south of the crossing.

After passing the 164 foot point plaintiff did not again look for a train. On cross-examination he stated: ''I didn't look, and I'll tell you why. I didn't see no train within six hundred feet of that track, and I only had about a hundred and sixty feet to go, and I could run that at eight miles an hour before a train could come down there six hundred feet, and I knew they were not allowed to run over eight miles an hour; I mean I understood they were not allowed to run over eight miles an hour. I think that scales there in right on the ridge; I think that is about half way, I don't know. When I got there I looked off up the railroad and I didn't see anything or hear anything. So I drove right on and attempted to cross. That's all I did. Of course I didn't look any more.'' Ben Unger, a witness for plaintiff, was working two or three hundred yards from the mill track, and south and west of the crossing, and he says that he did not hear the whistle or bell sounded. ''I did not hear that train sound the whistle, and I did not hear it ring the bell; if it did I didn't notice it at all. In fact I never thought anything about the train going down.'' This witness says that when the train passed him it was running about twenty-five miles an hour. He fixes this point at about two hundred yards south of the crossing, and himself at two or three hundred yards west of the train when it passed him. He also stated that he did not mean to say that the bell did not ring. ''I don't know but what the bell rang and the whistle blew, but I didn't pay any attention to it. This witness also stated that he paid no attention of the speed of the train after it passed him, and did not know what speed it was running when it approached the crossing. Sam McRoy, a witness for plaintiff, was about the crest of the ridge east of the crossing at the time of the collision, and he says that

he did not hear the train whistle, and didn't pay any attention to the bell ringing. On cross-examination this witness said: "I didn't say the bell did not ring, I mean I didn't pay any attention to it if it rang. I didn't pay any attention to the whistle either. I don't say it didn't ring, I said I didn't hear it. I wasn't studying about anything of that kind." J. M. Williams, produced by plaintiff, was about fifty yards north of the crossing as we understand, and he says that he did not see plaintiff approaching the crossing, but did see the train approaching, and heard it whistle about two hundred yards south of the crossing, but was not positive about the bell. Allen, the city marshal, called by plaintiff, stated that if one were watching closely there was a space of about thirty feet between the two buildings where an approaching train could be seen. There is a thirty or forty foot space between the two buildings. There wasn't any corn in there. He could have seen it if he had looked through there." Plaintiff was recalled and stated that he thought the corn was high enough to prevent him from seeing the train as he passed over the ridge.

For the defendant the engineer, fireman, and also the brakeman, who was at the time in the engine cab, testified that the whistle was sounded about six hundred feet south of the crossing, and the bell rung continually from that point to the crossing. James Teeters, a carpenter, was on the engine at the time of the collision and he says hat the whistle was blown, and to the best of his recollection the bell was rung. The train crew placed the speed of the train at seven or eight miles an hour. Teeters placed the speed at twelve or fifteen miles.. M. C. Ray was on a load of corn just west of the crossing and waited for the train to pass. He says that the whistle was blown, and that the bell was rung. W. G. Hopkins was about one hundred feet south of the crossing, and had been walking south on the mill track, and got off the track as this train approached him. He says that the whistle was blown, and attracted his attention, "and I stopped and waited until it passed

me.'' This witness says that the bell was ringing and continued to ring until it struck the car. Defendant showed by Fred Johnson that when an automobile is 110 feet from this crossing, and when within about sixty feet of the crossing the driver can see a train 240 feet south, and that from the 60 foot point to within six feet of the east rail, an approaching train can not be seen because of the warehouse. This witness made the measurements of distances, and made tests in a Ford car. Defendant introduced several photographs, which are reproduced in the record, and by these it would appear, if distances and positions are given correctly, and that is not questioned, that plaintiff, had he looked, could have seen this approaching train when he was 132 feet from the crossing and when 61 feet away. When 132 feet east of the crossing a train could be seen 319 feet south, and when 61 feet away from the crossing a train could be seen 303 feet south. It was shown by these photographs made from actual tests that when the front wheels of a Ford car were twelve feet from the east rail that the driver could see the head of the engine fifty feet south of the center of the crossing.

Plaintiff's instruction permitted recovery if the jury found that his injury and damage were the result of the negligence of defendant in running and operating its train at a high, reckless, or dangerous rate of speed, or at a rate of speed prohibited or forbidden by city ordinance, or because defendant did not ring the bell or sound the whistle as the train approached the crossing. Defendant urges that there is no substantial evidence tending to show that the whistle was no properly sounded, or that the bell was not properly rung as the train approached the crossing. Also it is urged that there is no substantial evidence tending to show that the train approached the crossing at a dangerous and reckless speed. The ordinance introduced by plaintiff made it a misdemeanor to run a train in the city limits in excess of eight miles an hour, ''where said road, track or tracks may or shall be unfenced.'' Defendant made an effort

to show that the mill track was fenced, but we do not think that the showing made is sufficient to raise an issue on that point. We do not deem it necessary, in the view that we take of this record, to go into the sufficiency of the evidence to submit the issue of whether the whistle was sounded or the bell rung, as the law requires, as this train approached the crossing. Neither is it necessary to go into a discussion of the issue of speed.

Defendant urges that its demurrer should have been sustained, and bases this contention principally on the proposition that plaintiff as a matter of law was guilty of contributory negligence; and that he failed to establish a case of negligence against defendant. We are of the opinion that plaintiff failed to observe that degree of care for his own safety that the law requires, and that the record makes this conclusion inevitable plaintiff drove the 164 feet. wih no attempt to look or listen, when he knew that at least two obstructions between that point and the crossing shut off his view. It is shown that between the small house and the warehouse there was a space of about thirty feet in which he could have seen the train had he looked. Plaintiff was familiar with this crossing. He had known it for years, and had been crossing it daily for several months. Plaintiff in a statement made to the claim agent shortly after the injury said: "I never saw any train at all, not even when or about the time I was struck." Plaintiff had no right to proceed, after leaving the crest of the ridge a hundred and sixty-four feet east of the crossing, without continuing to look if by looking he could see. The duty to look was continuous, and plaintiff did not discharge that duty by looking once at a point 164 feet from the crossing, and then failing to look again. In Kelsay v. Railroad, 129 Mo. l. c. 372, 30 S. W. 339, the court said:

"The duty of a traveler upon a highway, in approaching a railroad crossing, to use all reasonable precautions to ascertain the approach of trains and to avoid injury by them is well settled law, not only in

this court, but perhaps of all the courts of this country. This rule imperatively requires him to look carefully, in both directions, at a convenient distance from the crossing, before venturing upon it, if, by looking, a train could be seen. The duty will not be performed by attempting to look only from a point at which the view is obstructed. The duty is a continuing one until the crossing is reached. If there is a point between the obstruction and the track which gives opportunity to see, it is the duty of the traveler to look. He cannot close his eyes and thereby relieve himself of the consequence of his own neglect."

The language quoted supra from the Kelsay case was quoted with approval by the Supreme Court in Tannehill v. Railroad, 213 S. W. 818.

Plaintiff says he couldn't see up the track after leaving the 164 foot point, but he also says that he did not look. Other evidence shows that he could have seen had he looked at the space we have mentioned. But if it be conceded that the view of plaintiff was completely obstructed after passing the 164 foot point east of the crossing, plaintiff is in no better situation. If he could not see it was his duty to listen, and if it was necessary to make listening effective it was his duty to stop in order to listen or so that he could listen effectively. In Underwood v. Railroad, 182 Mo. App. l. c., 162, 168 S. W. 803, in discussing a crossing case, we said:

"It is elementary law that a railroad track is itself a warning of danger and that no one has a right to heedlessly enter on such danger relying on the persons running an approaching train to give him warning of its approach without himself taking every reasonable precaution to inform himself as to such approaching train. This is merely saying that where both parties are negligent, no liability arises. It is always a person's duty to look and listen when possible before entering on a railroad crossing. When stopping is essential to make looking and listening effectual, then stopping is necessary. [Wands v. Railroad, 106 Mo. App. 96,

99, 80 S. W. 18; Masterson v. Railroad, 58 Mo. App. 572, 575; Campbell v. Railroad, 175 Mo. 161, 183, 75 S. W. 86.] It is said in Hook v. Railroad, 162 Mo. 569, 63 S. W. 360, that: "When one cannot see a known threatened danger, as a fast moving train approaching a crossing, that is desired to be passed by the traveler, on account of some intervening obstruction cutting off his view, the demand of common prudence is more imperative than ever that he call into requisition some other sense or faculty that may aid him in the acquisition of the desired information."

The question of contributory negligence is not a complicated one, except as the facts are complicated. Here plaintiff undertakes to establish that his view was obstructed and because thereof he could not see the approaching train; yet he made no effort to use his sense of hearing although he knew he was approaching danger. He says that he neither saw nor heard the train until it was on him. It is not necessary to discuss the numerous crossing cases. We are clearly of the opinion that plaintiff was guilty of contributory negligence as a matter of law and cannot recover. The judgment below should be reversed, and it is so ordered.

*Sturgis, P. J.,* and *Bradley, J.,* concur.