JESSE JEWELL v. KANSAS CITY BOLT & NUT COMPANY et al., Appellants.

Division One, November 30, 1910.

1. **NEGLIGENCE:** Master and Servant: Independent Contractor: Employee: Question for Jury. Where there is evidence on the one hand, that one of the defendants, under whom plaintiff worked, was an independent contractor, employed by the defendant company to manufacture iron bars in its factory and deliver them to it in a finished condition, over whom

the company had no authority or control, and on the other that he was an employee and vice-principal of the company, the court cannot declare him an independent contractor and by a peremptory instruction relieve the company from all liability for an injury to plaintiff.

2. ————: ————: **Assumption of Risks:  Meaning of Rule.** A servant by entering the service of the master assumes all risks and dangers incident to that service, and much of the confusion arising from the application of the rule would be obviated if the words "incident to his employment" were kept in view. The servant assumes no other risks. The carelessness and negligence of the master are not incident to the servant's employment. The servant cannot, either by express or implied contract, release the master from liability for injuries sustained in consequence of the master's negligence.

3. ————: ————: **Independent Contractor:  Employee: Liability of Company.** If the company undertakes to furnish the mill and the appliances with which an independent contractor is to perform his contract, and retains possession and control over them, then the contractor and his employees have the same right that an ordinary employee has to demand of said company that the mill and the appliance be reasonably safe for the purpose for which they were furnished.

4. ————: ————: **Roller Mills: Peremptory Instruction.** As a bar of very hot iron came through one roller machine, plaintiff was expected to catch it with a pair of tongs and, circling it about, insert the end between the rollers of another. If the hind end of the bar had become flattened or rough, it would become fastened between the rollers of the machine it was leaving, and, the other end having already been started in the opposite direction through the other machine, the bar drew around towards the plaintiff, who stood inside the circle, unless there was an iron stanchion or post to protect him. There was no such post, and the evidence is undisputed that plaintiff was burned by the red hot bar because of its absence, but defendant seeks to evade liability for such absence by attempting to show the place was made reasonablyy safe by reason of the fact that the company had maintained brakes and a spindle in lieu of the stanchion. *Held*, that whether or not the place had been made reasonably safe by the substituted brakes and spindle was a question for the jury, and therefore it was not within the power of the court to give a peremptory instruction for defendant.

5. ————: ————: **Contributory Negligence:  Obvious Danger.** Unless the only conclusion that can be drawn from the facts

is that there was contributory negligence on the servant's part, mere knowledge of defects in the machinery or that the place is dangerous, will not authorize the court to hold the servant guilty of contributory negligence, as a matter of law. Unless the danger is so obvious that it cannot safely be used even with care or caution, or is such as to threaten immediate injury, the question is for the jury. If after a careful consideration of the evidence a disinterested fair-minded judge could not say that the dangers from working at the place were so glaring and obvious that a reasonably prudent man would not attempt it, then a peremptory instruction for defendant should not be given; and in arriving at a conclusion, the fact that numerous other employees had worked under the same condition without sustaining injury, should be considered.

6. ——————: ——————: ——————: **Threatened With Discharge.** If when the servant complained of the absence of the usual protection against danger and the substitution of other appliances in lieu thereof, he is told by the master's vice-principal that others worked with the appliances furnished and if he did not want to do so he could quit, the court should not, as a matter of law, hold him guilty of contributory negligence.

7. ——————: **Liability of Foreman: Misfeasance.** The ordering of the servant by the foreman into a dangerous place to work, especially after the servant has complained of the danger and been told to perform his work or quit, is a positive wrong or misfeasance, for which the foreman is personally liable in damages to the servant for the consequent injuries.

8. ——————: ——————: **Independent Contractor: How Far Liable to Employee in Mill.** Plaintiff was employed in a factory engaged in making iron bars, nuts and bolts. As the very hot bars were run between heavy rollers they were elongated into long rods, and plaintiff, with tongs, caught a bar as it came through the rollers and circled it about and started it between other rollers. If the hind end of the rod, as the result of the process, became rough or flared, it caught in the rollers of the machine it was leaving, and the front end by that time having been started in the opposite direction through other rollers, the rod became tight and drew up close to the machine, and liable to burn plaintiff, who stood inside the circle. If the iron was of inferior material and improperly heated the ends flattened and spread so the bar caught in the machinery; and a necessary part of the machinery was a "shears" used in cutting off the flattened or rough ends as they came through the rollers. The defendant company owned the mill and had entire control of it and all its appliances and equipment, and there was evidence that, through its superintendent, it hired, paid and discharged the men, who worked under the individual de-

fendant as foreman, and also that this defendant was an independent contractor, who hired the men, paying them so much per ton for the iron rolled, the money being paid to him by the company in bulk and divided among them according to a union scale of wages, and for that he manufactured the bolts and nuts and delivered them to the company in finished condition. *Held*, first, that if said individual defendant was an independent contractor, he was liable for failure to trim the ends of the bars and any consequent injury resulting to plaintiff from said failure, whether the shears were out of order or not; and, *second*, he would be liable if the piles of iron from which the billets were made were negligently constructed, and in consequence thereof plaintiff was injured.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune*, Judge.

AFFIRMED.

*Walter Littlefield* for appellant Bolt & Nut Company.

(1) The relation of master and servant did not exist between the respondent and the defendant company. The respondent was not employed nor paid by the appellant company, and had no authority or control over him in the performance of his work. The work of rolling iron, which he was engaged in at the time he was injured was being done for the defendant company by a lodge of the National Association of Iron, Steel and Tin Workers, under a written and printed contract, scales of prices set forth therein, based upon actual sales and shipments of manufactured iron and steel, and the wages of employees of the rolling mill department of the company from July 1, 1902, to and including June 30, 1903, were governed by the provisions of the contract. The respondent was employed and paid by the head roller as the representative of that association. The testimony of the respondent and his witnesses establishes the fact that he was not employed nor paid by the company, and that the com-

pany had no authority or control over him, and no authority to hire men to work in the rolling mill and no control over them, nor control over the method of operating, such as repeating the iron or working it straight through the rolls and in other respects. "A party in action is bound by his evidence as a witness as fully as he would be by an admission in a pleading." Holmes v. Leadbetter, 95 Mo. App. 419; State v. Brooks, 99 Mo. 137; Ferry v. Railroad, 67 S. W. 460; Shirts v. Overjohn, 60 Mo. 308; Wright v. Butler, 64 Mo. 165. The rule that prescribes the responsibility of principals for the acts of others is based upon the power of control. If the master cannot control the servant, the acts of the servant are clearly not his. Hilsdorf v. St. Louis, 45 Mo. 94. Corporations are not liable for damages occasioned by the negligence of contractors, the relation of master and servant not existing. Barry v. St. Louis, 17 Mo. 121; Milligan v. Wedge, 12 Ad. & E. 737; Allen v. Hayward, 53 E. C. L. 959; Quarman v. Burnett, 6 M. & W. 497; Rapser v. Cubit, 9 M. & W. 710; Reedie v. Railroad, 4 Excheq. 244; Knight v. Fox, 1 Eng. Law & Eq. 480. The defendant company must, at the time of the alleged injury, have had the right of control over the respondent. It "must at the time have had the right to direct the action of the servant, and to accept or reject its rendition by him." Mound City P. & C. Co. v. Conlon, 92 Mo. 221; Wyese v. Remme, 140 Mo. 290; Long v. Moone, 107 Mo. 334; 11 Ency. Law (2 Ed.), p. 5; 16 Am. and Eng. Ency. Law, p. 187. (2) There was no negligence shown on the part of the defendant company. The principal charge of negligence on behalf of the company was that it did not furnish a post or stanchion to be used by the men rolling the iron when they desired to repeat it. The testimony shows that the company had, a number of years before the accident, furnished an iron post and a hole in the iron floor in which to insert it, so that it could be used by the men when they wanted to repeat, and be taken out and

laid aside when they were not repeating iron, so as not to interfere with other work. The testimony of respond ent's witnesses shows that a second post was furnished by the company for a like use in the rolling mill, but that Sturges and his men, having control of the method of doing the work of rolling the iron, themselves dispensed with the use of the post altogether, and when the new iron floor was put down, they did not require, nor ask to have the hole placed in it for the purpose of inserting a post, which the testimony shows they could have had by asking for it, and would also have been furnished with another post at any time they called for it. (3) The company was not negligent because the shears were not working at the time the respondent was injured. The shears were not out of order as alleged, simply the band had run off the pulley during that heat. That fact was known by the respondent at the time, and he could have taken the bar through straight instead of repeating it. He had no occasion to use the shears, and could not have used them while the bar was passing through the rolls if they had been working. (4) Respondent's injury was caused by his own negligence. A man working in a dangerous position or with dangerous machinery must exercise care commensurate with the danger. If the employee is guilty of negligence contributing to his injury, he is not entitled to recover, notwithstanding he may have been justified in continuing in the service, knowing the dangers attending it. Hurst v. Railroad, 163 Mo. 309; Hogan v. Railroad, 150 Mo. 36; Shields v. Railroad, 87 Mo. App. 637; Clover v. Bolt & Nut Co., 153 Mo. 327; Colliott v. Am. Mfg. Co., 71 Mo. App. 163; Walter v. Wire Co., 14 Mo. App. 592; Schroeder v. Railroad, 108 Mo. 322; Gutridge v. Railroad, 105 Mo. 520; Alcon v. Railroad, 108 Mo. 81. If a servant voluntarily places himself in an extra dangerous position beyond the hazard of his employment, he is guilty of negligence; but he is not if he assumes such position in obedience to the direction of his master. Cox

v. Granite Co., 39 Mo. App. 424; Francis v. Railroad,. 110 Mo. 387; Moore v. Railroad, 146 Mo. 572. It is the duty of the employer to guard the employee against probable and not possible dangers. Lawless v. Gas Light Co., 72 Mo. App. 679; Blundell v. Manufacturing Co., 189 Mo. 559. (5) Respondent assumed the risk of working in the rolling mill, repeating hot iron bars in the absence of a post to carry them around. The servant assumes the risk of every danger belonging to the work itself. Rush v. Dowling, 93 Mo. App. 156; Kline v. Shoe & Clothing Co., 91 Mo. App. 102; Stalzer v. Packing Co., 84 Mo. 565. The employer is not liable where he furnishes reasonably safe machinery, when used in the manner intended, but which may become dangerous if their use is perverted by the employee. Gratis v. Railroad, 153 Mo. 380; Minner v. Railroad,. 167 Mo. 99; Nash v. Dowling, 93 Mo. App. 156; Lee v. Railroad, 112 Mo. App. 372.


*John W. Clements* and *Sebree, Conrad & Wendorff* for appellant Sturges.

(1) The court erred in sustaining the motion for a new trial as to appellant Sturges. (a) Sturges was in no way liable. He was a servant of the Bolt & Nut Company and not an independent contractor. 26 Cyc. 1546; Crenshaw v. Ullman, 113 Mo. 639; Weise v. Remme, 140 Mo. 289; Neimeyer v. Weyerbaueser, 95 Ia. 497; Johnson v. Spear, 76 Mich. 139; Whitney v. Clifford, 46 Wis. 138; Speed v. Railroad, 71 Mo. 303; Roddy v. Railroad, 104 Mo. 234; Fell v. Coal Mining Co., 23 Mo. App. 216. (b) Sturges and plaintiff both came from the same union and went to work under the same contract between the union and the company, and both shared in the result of the work by receiving the compensation provided in said contract. Neither Sturges nor the plaintiff were required to furnish any material, tools, machinery, or place to work in conducting the business

in which they were mutually interested. (c) Sturges was a foreman and in that capacity was only liable to plaintiff Jewell, if at all, for a positive wrong or misfeasance, and not for non-feasance or mere neglect of duty. Harriman v. Stowe, 57 Mo. 93; Edge v. Electric Co., 206 Mo. 496; McGinnis v. Railroad, 200 Mo. 347. (2) Jewell was an experienced man, was entirely familiar with all the conditions and aware of the danger of the work, and assumed the risks. Murphy v. Railroad, 115 Mo. 111; George v. Railroad, 225 Mo. 364; Swearingen v. Railroad, 221 Mo. 644; Bradley v. Railroad, 138 Mo. 293; Pulley v. Standard Oil Co., 136 Mo. 172; Blundell v. Manufacturing Co., 189 Mo. 552; Knorpp v. Wagner, 195 Mo. 637.

*Reed, Atwood, Yates, Mastin & Harvey* for respondent.

(1) The point made in the Nut & Bolt Company's brief to the effect that no recovery can be had against that company because the relation of master and servant did not exist between the respondent and that company is not well taken. This point has been directly decided upon a state of facts exactly like those disclosed by the record in this case. Indiana Iron Company v. Gray, 19 Ind. App. 565. The liability is also joint. Rice v. Smith, 171 Mo. 331. (2) There is no question of assumed risk in this case. When the servant is injured because of the master's negligence, the plea of assumed risk cannot successfully be made. The master cannot do by implication that which the law does not permit him to do by express contract. The failure to furnish a proper post was negligence. Curtis v. McNair, 173 Mo. 270; Smith v. Fordyce, 190 Mo. 28; Phippin v. Railroad, 196 Mo. 347; Dakan v. Chase, 197 Mo. 267; Charlton v. Railroad, 98 S. W. 529; George v. Railroad, 225 Mo. 364; Sheperd v. Railroad, 189 Mo. 371; Pauck v. Beef Co., 159 Mo. 467; Huhn v. Railroad,

92 Mo. 447; Holloran v. Iron Co., 133 Mo. 476; Cohn v. Railroad, 183 Mo. 94; Holmes v. Brandenbaugh, 172 Mo. 447; Wendler v. Furniture Co., 165 Mo. 527. (3) But where the master's negligence takes the question of assumed risk out of the case, there may be a question of contributory negligence. "If the peril of the servant in the performance of his duty is increased by the negligence of the master, and if the servant, knowing that the master has been thus negligent, and that that negligence has rendered the performance of his duty more hazardous, continues in the performance of that duty, the question of contributory negligence then arises, and not a question of assumption of risk." Dakan v. Chase, 197 Mo. 267; Cole v. Railroad, 183 Mo. 94. (4) This question of contributory negligence is ordinarily for the jury. Brands v. Car Co., 112 S. W. 514; Mathis v. Stock Yards Co., 185 Mo. 447. "Mere knowledge of the danger in working with a defective instrumentality will not defeat the action unless the danger was so glaring as to threaten immediate injury." Deputy v. Railroad, 110 Mo. App. 123; Sheperd v. Railroad, 189 Mo. 371; Dakan v. Chase, 197 Mo. 267; Weldon v. Railroad, 93 Mo. App. 674. A case where the plaintiff knew the danger, and so testified, yet was permitted to recover: Burkhead v. Rope Co., 217 Mo. 408; Monahan v. Coal Company, 58 Mo. App. 73; Buckner v. Stock Yards Co., 221 Mo. 700; Conroy v. Iron Works, 62 Mo. 39. And unless the only conclusion that can be drawn from the facts is that there was contributory negligence, the question is for the jury. Campbell v. Railroad, 175 Mo. 175; George v. Railroad, 225 Mo. 364. (5) When respondent complained of the absence of a fixed post or stanchion and of the use of the device furnished by appellants, he was told that others worked with the instrumentality furnished and that if he did not want to do so, he could quit. "Courts should be careful about presuming that a servant accepts a particular risk, unless the conclusion is inevitable; whether he freely con-

sented to the risk or was constrained in some manner, such as the fear of losing employment, is a question for the jury." Rigsby v. Oil Well Supply Co., 91 S. W. 467; Stevens v. Railroad, 96 Mo. 207; 2 Thompson on Neg., 975; 1 Labatt on Master and Servant, sec. 439, p. 1241; Railroad v. Norment, 84 Va. 172; Brazil Co. v. Hoodlet, 129 Ind. 327; Mason v. Railroad, 111 N. C. 482; Mellor v. Mfg. Co., 150 Mass. 362. (6) Respondent's complaint that the shears used for cutting off the rough ends when they showed a disposition to sliver and the order of the foreman to proceed, under the decisions of this state, amounted to a guaranty of respondent's safety from any injury happening on account of the condition of the shears; and if this injury can be said to be due in whole or in part to this cause, he was entitled to recover. McGowan v. Railroad, 61 Mo. 532; Roland v. Railroad, 20 Mo. App. 467; Butz v. Construction Co., 199 Mo. 287; Hulin v. Railroad, 92 Mo. 440; Keegan v. Kavanaugh, 62 Mo. 233; Stephens v. Railroad, 96 Mo. 212.

WOODSON, J.—This suit was begun in the circuit court of Jackson county, by the plaintiff, to recover the sum of $25,000 damages for personal injuries sustained by him through the alleged negligence of the defendants.

A trial was had, and at the close of plaintiff's evidence the court, at the request of defendants, gave a peremptory instruction directing the jury to find for the defendants. In obedience to that instruction the jury returned a verdict for them. Thereupon, the plaintiff filed his motion for a new trial, which was by the court sustained, and from this order and judgment the defendants duly appealed to this court.

The defendant company was a corporation organized and incorporated under the laws of the State of Missouri, engaged in the manufacture and sale of iron

bars, bolts and nuts, at Kansas City. The plant was a large one and employed about three hundred men in the various departments. There was evidence tending to prove that defendant Sturges was an employee of the defendant company, and was the foreman in charge of the rolling mill department of the company; and there was evidence which also tended to show that he was an independent contractor manufacturing iron bars in the rolling mill and delivering them to the company as a finished product.

The respondent's evidence tended to show that the mill was operated by appellant company under an agreement with appellant Sturges, by the terms of which he hired certain men, all of whom were paid so much per ton for the iron rolled, this sum being paid to Sturges in bulk and divided by him among the workmen according to a certain scale of wages fixed by the National Association of Iron, Steel and Tin Workers. That the mill was owned by appellant company, and that it employed and furnished the superintendent thereof, S. Y. High, who had entire charge of the mill, hired and discharged the men, including those who were working under Sturges. That two roller bosses had charge of the men, Sturges and one Palmer. The catchers, that is, such men as respondent, were also paid by Sturges, as indicated, while machinists, that is, men who had general charge of the machinery and appliances about the mill and who repaired same when necessary, were employees of and were paid by appellant company.

The arrangement between Sturges and the appellant company was in writing, but not introduced in evidence. While there was some parol evidence introduced without objections, attempting to prove the contents of that writing, yet it was so meagre and vague we are unable to ascertain therefrom just what was the character of the arrangement made between them, or to determine therefrom just what was the relation

thereby created between the plaintiff and the defendants as to the manufacture of the iron bars, or as between the defendants themselves.

The plaintiff was employed in the rolling mill department which manufactured the iron bars, and he was known as a "catcher," suggested by the character of his work to be presently mentioned.

Those bars were manufactured according to the following process: Scrap iron was bundled up, bound together and heated to a white heat in a furnace. It was then run through a set of rolls by other employees, called "roughers," and thus formed into billets some three feet in length and three inches thick; it was then passed to another set of employees, called strainers and catchers, of which plaintiff was one, who passed it through other sets of rollers several times, reducing it each time in thickness and increasing its length until it reached the desired dimensions.

The rolls at which plaintiff was engaged stood in an east-and-west direction, containing several sets of rolls about fifteen feet in length. The plaintiff occupied the north side of the string of rolls. Those working with him were on the south side of the string of rolls. Those on the south side would take a billet from the roughers and place the end of it in the rolls, the rotary motion of which would convey it to the north side, where the plaintiff would catch it with a pair of iron tongs, and place the end of it in another set of rolls beneath the ones from which it had just passed, and it would be carried back to the south side by the same means and reduced in thickness and extended in length, as previously stated. This method was continued until the bar was some thirty or forty feet in length, when the process of "repeating" was begun, that is, the plaintiff would catch the end of the bar with a pair of tongs as it came through at the east end of the rolls and carry it around north in a semicircle and place the front end in the rolls at the west end of the

string which so ran as to carry the bar back to the south side. By this process the bar would be coming through at the east end of the string of rolls to the north side and at the same time it would be going through the rolls to the south side at the west end of the rolls.

The following is a copy of the charges of negligence made by the plaintiff against the defendants, to-wit:

"That it was the duty of the defendants to furnish to the plaintiff reasonably safe material, and reasonably safe machinery with which to work, and a reasonably safe place in which to work and to operate said machinery, and to permit and direct the doing of said work in a reasonably safe manner. That at all the times mentioned herein all of said materials, appliances and machinery were, and the method of conducting, controlling and operating the same was under the direct management, supervision and direction of the said defendants, or their representatives and vice-principals, and at all times herein mentioned plaintiff exercised due care and caution and was without negligence. That the defendants, disregarding their duty in the premises, carelessly and negligently, on the day last aforesaid, caused certain materials, to-wit, scrap iron of an inferior and unfit character to be furnished and used in the manufacture of the said heavy bars of highly heated iron, which plaintiff was required to handle as aforesaid.

"Plaintiff further states that one of said bars hereinafter referred to was improperly and insufficiently heated, and that because of the inferior material used, and because the said bar was improperly heated, said bar contained flaws and was irregular in shape and that one of the ends thereof was flattened and spread so that it caught in the machinery of said train of rolls, as hereafter stated.

"Plaintiff further states that a part of the machinery necessary to the reasonably safe doing of the

work plaintiff was required to perform was a device commonly known as 'the shears,' used for the purpose of cutting off the irregular, rough, flattened, splintered or otherwise improperly shaped ends of the bars of iron being manufactured. That at the time of the accident, hereinafter described, and for a long time prior thereto, the shears, attached to the machine aforsaid, had been out of order; that they were worn and refused to work properly, and at the time of the accident would not work—all of which was known to the defendants, or by the exercise of reasonable diligence could have been known to them. That it was dangerous to work said machine in the manufacture of iron as aforesaid, without the use of said shears, which the defendants well knew. That notwithstanding such knowledge the defendants directed the plaintiff to continue to work with said machine in the defective and dangerous condition aforesaid, and that because said shears were in the defective and useless condition aforesaid, plaintiff was unable to trim or cut off the irregular ends of said iron bar, and that by reason thereof said bar caught, as hereinafter set forth.

"Plaintiff further states that the ordinary, usual and reasonably safe way of manufacturing iron of the weight and size which he was then required to work, was to pass the same back through the same set of rolls through which it had been received, and that he was so engaged in doing the work when by express direction of the defendants, through their vice-principal, he was required to receive said iron as it was passing through one set of rolls and to bend or turn it so as to cause it at the same time to start to pass through a second set of rolls. That it was dangerous to operate the machinery, as last aforesaid, with a bar of iron of the kind and size then being manufactured—all of which the defendants well knew, or by the exercise of ordinary care could have known.

"Plaintiff further states that on said 9th day of

December, 1902, the said defendants carelessly and negligently failed and neglected to provide and to maintain the usual ordinary and customary device, used by similar mills for similar purposes of handling, supporting, adjusting and protecting said iron bar, so as to keep it from coming in contact with the person of the plaintiff or other employees similarly engaged. Said usual, ordinary and customary device being in substance an iron post or stanchion or support adjusted between the two series of rolls through which said iron was being passed as aforesaid.

"And plaintiff further says that at said time and place defendants carelessly and negligently failed and neglected to provide or maintain any device or machinery to take the place of or supply the absence of the aforesaid usual, ordinary and customary device.

"And plaintiff states that the neglect and failure of the defendants to so have an iron post, stanchion or other proper device to keep said highly heated iron from coming in contact with the plaintiff as aforesaid, rendered the place in said rolling mill department and the work therein where plaintiff was then and there required to so work as aforesaid unusually and unnecessarily hazardous and dangerous.

"Plaintiff states that the defendants knew or by the exercise of ordinary care and caution could have known of all of the aforesaid defects and deficiencies on said 9th day of December, 1902. That said defendants had known or by the exercise of ordinary care and caution could have known of said deficiencies long before the plaintiff was injured and in time to have remedied the same, and by the use of reasonable care and caution could have remedied all of said defects before plaintiff was injured, and thus have prevented the injuries to plaintiff complained of; but plaintiff says defendants carelessly and negligently failed to so remedy said defects and carelessly and negligently allowed said defects in said materials and machinery to exist and carelessly

and negligently directed plaintiff to proceed with his work with the defective machinery, appliances and materials aforesaid, and carelessly and negligently required plaintiff to work the iron bar through the two sets of rolls as aforesaid, when defendants knew or by the exercise of ordinary care would have known that it was unusually hazardous and unsafe to so work the said iron bar.

"And plaintiff states that while he was so engaged in his work, under the direction of defendants, as above set forth, one of said large, heavy and highly heated iron bars, which he was working, because of the improper material in the same and because it had been improperly heated as above set out and because it had not been trimmed and could not be trimmed because of the want of iron shears, and because the iron shears would not work as aforesaid, and because said bar was improperly and imperfectly shaped as aforesaid, one end of the said iron bar became fastened and stuck in the first set of rolls above referred to, while the other end of said iron bar was passing through the second set of rolls whereby and because of the absence of said stanchion to protect plaintiff from coming in contact with said iron bar, and to hold said iron bar where it could not come in contact with him, that said iron bar was pulled rapidly through said second set of rolls, and brought suddenly in contact with and against the right leg of plaintiff, greatly injuring plaintiff, as hereinafter set forth. That in all of the matters and things aforesaid defendants were careless and negligent. And that the injuries complained of by plaintiff as herein stated were directly caused by said carelessness and negligence."

For the safety of the catcher, similar mills customarily have a stout iron post for use when bars are to be repeated, which is inserted in a fixed hole in the floor of the mill, and the bar being rolled is taken by the operative around this post before inserting the same

into the second set of rolls, to the end that should the same become stuck in the first set of rolls, as it pulls taut, it may be stopped by the fixed post, and thus prevented from coming in contact with the workman who necessarily stands within the circle described by the bar of iron. Such a post as this had been in use in the defendants' mill, but at the time of plaintiff's injury, had been superseded by the use of a kind of an iron spool or spindle, weighing about two hundred pounds, which was set up in the place where the fixed post usually stood, but which was not fastened to the platform in any way, and which had no device of any kind to prevent same from toppling over when the iron bar came in contact with the same. Before his injury, respondent complained of the use of this spindle and the disuse of the fixed post or stanchion which had been in use when he was formerly in the mill, whereupon Sturges, the boss to whom he complained, told him "that the other men worked there, and if they could do it I certainly could, and gave me to understand that if I could not do it I knowed what I could do, and I would have to do as the rest of them done."

It is shown by the testimony of many witnesses that such a fixed post or stanchion is customarily provided for the safety of workmen in repeating iron by similar rolling mills throughout the country. It further appears from the evidence that for the safety of the catcher it was necessary to cut off the bad ends of these billets of iron as they came red hot through the rolls, for the reason that they would become ragged and present such jagged ends as sometimes to cause them to catch in the rolls. For this purpose, a pair of large metal shears were hung just above the catcher's stand at the rolls which were worked by machinery. Respondent, who was working upon the night shift, was injured about fifteen or twenty minutes before quitting time, that is, about a quarter to six o'clock in the morning. Noticing that the shears were out of

order, respondent called the attention of the night boss, Palmer, to this fact, who ordered him to go ahead, as it lacked but a short time until they would quit work. Palmer said, "We will go ahead; it is about six."

While working under the conditions before mentioned, without the protection of the fixed post, such as was ordinarily furnished in mills of this character, and while working with the shears out of order, as indicated, and while repeating the bar, as stated, the last end of it caught in the first set of rolls through which it passed, the other end having previously been inserted in the second or west set of rolls, thus forming a semicircle about plaintiff, and in pulling taut knocked over the spindle before described, which was not anchored to the floor, and pulled directly against the leg of plaintiff, and so burned the same that after months of suffering his leg was amputated.

Such are substantially the facts of the case.

Whatever additional evidence may be necessary for a proper disposition of the case will be noted in the opinion.

I.  The first insistence made by counsel for appellant company is that the relation of master and servant did not exist between it and the respondent; and for that reason it is not liable to him in any sum for the injuries of which he complains.

That insistence is predicated upon the contention that the record shows that appellant Sturges was an independent contractor, employed by the company to manufacture the iron bars mentioned in the evidence, and deliver them to it in a finished condition, without any authority or control on its part over said Sturges.  If that is true, then the respondent was not an employee of the company, but was an employee of Sturges.  In that case the doctrine of *respondeat superior* would not apply, and the company would not be liable in this case for any fault or neglect on the part

of Sturges. [Hilsdorf v. St. Louis, 45 Mo. 94; Barry v. St. Louis, 17 Mo. 121.] While that contention of counsel correctly states an abstract legal proposition, yet the trouble we are confronted with in applying that rule to the case at bar is the fact that the evidence also tends to show that Sturges was an employee and a vice-principal of the appellant company. That being true, the evidence presented a question of fact for the jury to determine and it could not be reached by a peremptory instruction. This is elementary, and a citation of authorities in support thereof would be a supererogation of labor.

We, therefore, hold that the trial court erred in giving the peremptory instruction.

II. It is next insisted by counsel for both appellants, that respondent is not entitled to recover from either of them, regardless of the relation that existed between them, for the reason that respondent's injuries were due to the dangers incident to his employment, which he assumed by accepting employment from them.

It is elementary that a servant by entering the service of the master assumes all dangers *incident* to that service, and when injured in consequence thereof he cannot recover damages from the master on account of such injuries. While this rule is plain and easily understood, yet its application to particular cases has been a great source of trouble and annoyance to both the bench and bar of this state and elsewhere. Much of this confusion could be obviated, if the terms of the rule itself should be constantly borne in mind, that is, that the servant by entering the employment of the master *assumes all risks which are incident to that employment,* but he assumes none other. The carelessness and negligence of the master are in no sense incident to the servant's employment. The servant can neither by express or by implied contract release the master from liability for injuries sustained in

consequence of the master's negligence. [Curtis v. McNair, 173 Mo. 270; Smith v. Fordyce, 190 Mo. 28; Phippin v. Railroad, 196 Mo. 347; Dakan v. Chase, 197 Mo. 1. c. 267; George v. Railroad, 225 Mo. 364.] So in discussing this rule and its application to a concrete case, great care should be exercised in ascertaining whether or not the injury complained of was due to dangers incident to the servant's employment, or was it the result of the master's negligence. If due to the former, then a recovery should be denied; but if caused by the latter, then a recovery should be allowed.

In the case at bar, what was the proximate cause of the injury? Clearly it was the failure of the company to maintain the iron post described in the petition. If it had been there it would have been a physical impossibility for respondent to have sustained the injuries of which he complains. That being true, then the question presents itself, was the company negligent in failing to maintain the post at the place and in the manner stated in the petition? In order to properly determine this question we must consult the evidence bearing upon that question.

It is undisputed that the appellant company owned the entire plant in question, and had exclusive control over every department thereof, including the rolling mills. That is (whatever may have been the relation that existed between the appellant company and Sturges, whether that of contractor or vice-principal) the company had possession of and control over the building in which the mill was located, as well as the mill itself, including the engines, boilers and machinery connected therewith. The company also operated the entire plant, including the mill, and made all necessary repairs throughout all of the departments of the plant. Sturges and his assistants had nothing to do with those matters, except to manufacture the iron bars mentioned in the evidence in the building and on the mill

which was thus owned, controlled and operated by the company; but, as previously stated, this record does not disclose whether Sturges was an independent contractor in doing that work or whether he was an employee and foreman of the company in charge of that work.

Under this view of the case, the company undertaking to furnish and furnishing the place where and the instrumentalities with which the work was to be performed, the law imposed upon it the duty to exercise ordinary care in seeing that the place where Sturges and his assistants were to work, and that the instrumentalities with which they were to labor were reasonably safe for that purpose, even though it be conceded that Sturges was an independent contractor. This is true for the reason that if the owner undertakes to furnish the place and the appliances with which an independent contractor is to perform his contract, and retains possession and control over said place and appliances, then the contractor and his employees have the same right that an ordinary employee has to demand of the owner that they be reasonably safe for the purpose for which they were furnished. [Geismann v. Missouri Edison El. Co., 173 Mo. 654; Ryan v. Railroad, 190 Mo. 621; Clark v. St. Louis & Suburban Ry. Co., —— Mo. ——; Clark v. Union Iron & Foundry Co., —— Mo. ——. The last two cases are just handed down by this division of the court, and are now pending in Court in Banc. The precise question now under consideration was fully considered in the Clark Case, and for that reason it is useless to further extend this discussion along that line.

The only reason why the owner is not liable in damages for injuries sustained by an employee of an independent character is because the owner has no control over the actions of the contractor, whether they be negligent or not. But in the case at bar, as before stated, Sturges had no control over the place in which or the

instrumentalities with which he was manufacturing the bars. And since it is practically undisputed that respondent was injured in consequence of the absence of the post, we may drop the question of independent contractor, and proceed to the consideration of the question, was it negligence on the part of the company to have failed to furnish and maintain the post in question?

The petition alleged and the evidence of respondent tended to prove that the ordinary, usual and safe way to operate rolling mills of this class while the process of "repeating" was going on was to have an iron post firmly set and maintained in the floor of the building in which the mill is located, some ten or twelve feet from the string of rolls, around which the bar was to pass in a semicircle, of sufficient strength to stop the movement of the bar whenever the end thereof should for any cause become caught in the rolls, and thereby prevent the loop of the bar from catching the employees by the feet or legs and drawing them up against the framework of the rollers. Upon the other hand, the evidence introduced on behalf of appellants tended to show that, notwithstanding the fact that the post had been dispensed with, still the place where and the instrumentalities with which respondent was laboring were made reasonably safe for respondent and the other employees in the mill, by reason of the fact that the brakes and spindle mentioned in the evidence in the mill in lieu of the post were maintained as a means of protection against danger to respondent and other employees thereof.

The evidence of the respondent upon this question was contradictory of and in direct conflict with that of the appellants. This presented a question of fact for the jury; and the trial court should have, under proper instructions, submitted it to the jury. If they should take respondent's theory of the case, then, of course,

they would necessarily find that the company was negligent as charged; but, upon the other hand, should they find according to appellants' contentions, then the company would be exonerated from all negligence in that regard, and, consequently, respondent would not be entitled to a recovery on that account.

There are instances where the court can declare as a matter of law that the plaintiff's injuries are the result of the assumption of risk, that is, where all the evidence in the case shows that the danger which caused the injury was not the negligence of the master, or the result thereof. For instance, in a case where the master employs a servant to dress stone and furnishes him with the usual and ordinary tools with which that work is usually performed; and, while so engaged, suppose the servant should so use the hammer as to cause a chip from the stone to fly up and strike him in the eye and injure the same. In such case clearly the servant assumed the risk of being so injured, for the reason that it was not traceable to the negligence of the master; and in such a case the court should so instruct the jury. But there is no analogy between that case and the case at bar as made by respondent. The rule governing his case would be more like that case if the platform furnished by the master upon which the stone was to be dressed was too weak to properly support the weight, and the evidence for the servant should tend to show that the master was negligent in furnishing the weak platform; and if while so dressing the stone the platform should give way and precipitate the servant to the ground and injure him, then in that case the court could not as a matter of law declare the servant's injury was due to an assumed risk; but such a case would be one for the jury to pass upon under proper instructions. In other words, I understand the law to be that a servant by accepting employment from its master, he thereby assumes all risks or dangers incident thereto, and if injured by any of

them, then he is not entitled to a recovery against the master. While upon the other hand, the negligence of the master is not and cannot under any circumstances become an *incident* to the servant's employment. The moment the master's negligence enters into the cause of the servant's injury, then at that moment the negligence of the master withdraws the doctrine of assumption of risks, or, probably more correctly speaking, the doctrine of assumption of risk does not then apply to injuries caused by such conduct of the master. See cases previously cited. Where there is a conflict in the evidence, as here, it is error for the trial court to give a peremptory instruction to the jury to find for either party, but should submit the issues to the jury for determination under proper instructions.

We are, therefore, of the opinion that the circuit court erred in giving the peremptory instruction to find for the appellants.

III. Counsel for appellants also contend that respondent was guilty of such contributory negligence as should bar his right to a recovery.

This contention is based upon the facts that the record shows that respondent knew of the absence of the safety post mentioned, and that he was aware of the danger incident to its absence, for the reason that he complained to Sturges of its absence and told him that he did not like to work around the mill without the post. To that protest, Sturges replied that the other men did not object to working without it, and if he, the respondent, did not wish to do likewise he knew what he could do, meaning that he could quit the work.

It is upon that state of the record counsel for appellants contend that the court should, as it did by giving the peremptory instruction, declare as a matter of law that respondent was not entitled to a recovery.

In approaching this proposition it is well to bear in mind some of the elementary principles of law gov-

erning contributory negligence. In the first place, ordinarily, contributory negligence is a defense which must be charged in the answer and established by the defendant by a preponderance of the evidence to the reasonable satisfaction of the jury. It is also equally well settled in this state that when the peril of the servant in the performance of his duty is augmented by the negligence of the master, and the servant, if knowing that the master has been thus negligent, and that such negligence has rendered the performance of his duty more hazardous, continues in the performance of that duty, the question of contributory negligence then arises, and not a question of assumption of risk. [Dakan v. Chase, 197 Mo. l. c. 267; Cole v. Railroad, 183 Mo. l. c. 94.]

In the case of Brands v. St. Louis Car Co., 213 Mo. l. c. 707, the court said: "It is the settled law of Missouri that the master is bound to use reasonable care and precaution to furnish his servant safe appliances with which to do his work and in keeping them in good order and condition, and the servant does not assume the risk of danger from the use of unsafe machinery unless the defects are so glaring and obvious that a reasonably prudent man would not attempt to use them."

In Mathis v. Stock Yards Co., 185 Mo. l. c. 447, it is said: "And if the servant knows, or by the exercise of ordinary care could know, that the appliances furnished are not altogether or reasonably safe, the servant is not obliged to refuse to use the appliances or quit the service of the master if he reasonably believes that by the exercise of proper care and caution he can safely use the appliances, notwithstanding they are not reasonably safe. And if he does use them, and exercises such care and caution, and is injured, the servant does not waive his right to compensation for injuries received in consequence, nor is he guilty of contributory negligence; but if the appliance is obviously so

dangerous that it cannot safely be used even with care or caution, or, as it is sometimes said, if the danger of using it is patent, or such as to threaten immediate injury, then the servant is guilty of contributory negligence if he uses it, and the master is not liable, notwithstanding his prior failure of duty.''

''Mere knowledge of the danger in working with a defective instrumentality will not defeat the action unless the danger was so glaring as to threaten immediate injury.'' [Depuy v. Railroad, 110 Mo. App. 123; Sheperd v. Railroad, 189 Mo. 1. c. 371; Dakan v. Chase, 197 Mo. 267; Weldon v. Railroad, 93 Mo. App. 674.]

The following are cases where plaintiff knew the danger, and so testified, yet was permitted to recover: Burkard v. Rope Co., 217 Mo. 1. c. 480; Monahan v. Coal Co., 58 Mo. App. 73; Buckner v. Horse & Mule Co., 221 Mo. 700; Conroy v. Iron Works, 62 Mo. 39.

Unless the only conclusion that can be drawn from the facts is that there was contributory negligence, the question is for the jury. So stated in Campbell v. Railroad, 175 Mo. 175.

The latest case in this state to which my attention has been called which discusses contributory negligence and the law applicable thereto is the case of George v. Railroad, 225 Mo. 364, where it is said: ''But if the servant incurs the risk of place or machinery, which, though dangerous, are not so much so as to threaten immediate injury, or where it is reasonable to suppose that they may be safely used or occupied with great skill and care, the mere knowledge of the defects on the servant's part will not defeat a recovery. Negligence on the part of the servant in such cases does not necessarily arise from his knowledge of the defect, but is a question of fact to be determined by the jury from such knowledge and all other facts and circumstances shown by the evidence.''

After a careful reading of this evidence we are unable to see how any disinterested, fair-minded man

could say that the dangers from working about the mill without the post were so glaring and obvious that a reasonably prudent person would not attempt to work thereat, especially in view of the fact that numerous other employees had for years worked there under the same conditions, and that, too, without sustaining any injury on account of that peril.

There is still another reason why the court should not have declared as a matter of law that respondent was guilty of contributory negligence; and that is, when respondent complained of the absence of a fixed post and of the use of the device furnished by appellants in lieu thereof, he was told by Sturges that others worked with the appliances furnished and that if he did not want to do so he could quit.

In Rigsby v. Oil Well Supply Co., 115 Mo. App. 297, it is said: "A servant has a right to agree to use implements which are not in perfect order, if he desires. To hold otherwise abridges unnecessarily the freedom of contract. On the other hand, courts should be careful about presuming that a servant accepts a particular risk. Unless the conclusion is inevitable, whether he freely consented to the risk or was constrained in some manner, such as the fear of losing employment, is a question for the jury."

In Stephens v. Hannibal & St. Joseph Ry. Co., 96 Mo. 207, this court said: "It is held in many cases where the servant knowingly incurs the risk of defective machinery, still, if not so defective as to threaten immediate injury, it is for the jury to determine whether there was negligence on his part." In that case the following language from 2 Thompson on Negligence, 975, is also quoted approvingly: "If the master orders the servant into a situation of danger, and he obeys and is thereby injured, the law will not deny him a remedy against the master on the ground of contributory negligence, unless the danger was so glaring that no prudent man would have entered into it, even

where, like the servant, he was not entirely free to choose.''

''There may be cases where the servant is ordered to do a particular act, and the order is so unreasonable, and the act so manifestly dangerous to life and limb, that the court, on the evidence, should declare the servant guilty of negligence in obeying the order of the master. . . . The general rule, however, is that the question is one for the jury. It cannot be said that the servant and master are on an equal footing, even where they have equal knowledge of the danger.'' [Stephens v. Railroad, supra.]

''If a danger is not so absolute or imminent that injury must almost necessarily result from obedience to an order, and the servant obeys the order and is injured, the master will not afterwards be allowed to defend himself on the ground that the servant ought not to have obeyed the order.'' [1 Labatt on Master & Servant, sec. 439, p. 1241.]

In the case of Richmond & D. Railroad Co. v. Norment, 84 Va. 172, it is said: ''The third instruction of the defendant is to the effect that an employer is released from all liability for negligence, although aware of its continued existence, if the injured employee continued to work for him after he knew of the negligent and dangerous manner in which the employer allowed his business to be conducted. . . . It was palpably improper. It is sanctioned neither by reason, justice, nor law. The usual and legal duty of every employer is to provide all means and appliances reasonably necessary for the safety of those in his employment. It is a cruel, an inhuman doctrine that the employer, though he is aware that his own neglect to furnish the proper safeguards for the lives and limbs of those in his employment, puts them in constant hazard of injury, is not to be held accountable to those employees who, serving him under such circumstances, are injured by his negligent acts and omissions, if the injured par-

ties, after themselves becoming cognizant of the peril occasioned by their employer's negligent way of conducting his business, continue in his employment and receive his pay, though they may be virtually compelled to remain by the stern necessity of earning the daily food essential to keep away starvation itself."

And the Indiana Supreme Court has directly passed upon the question. In the Brazil Block Coal Co. v. Hoodlet, 129 Ind. 327, it is said, in dealing with the contention that the plaintiff assumed the risk: "The complaint avers that he did this by the express command of the appellant. But it may be said he need not have obeyed the command; [that] he was free to quit the service and thus avoid the danger, and that by voluntarily continuing in the service and obeying the command, it must be presumed that he consented to take the additional risk. While in theory the employee, whose master furnishes appliances which both know are defective, is at liberty to quit the service, and refuse to be subjected to. the enhanced danger, we cannot close our eyes to the fact that the necessities of the struggle for existence tend strongly to deprive the employee of that theoretical independence and freedom of action. While the service cannot be compulsory in the sense that the employee can be compelled to work against his will, yet the very nature of the relation existing between the parties carries with it the irresistible inference of dependence upon the one side."

The same doctrine is declared by the Supreme Court of North Carolina in the case of Mason v. Railroad, 111 N. C. 482, where a brakeman had been injured in obeying an order of his conductor, which violated a rule of the defendant company. The court said: "If the servant acts upon a well grounded fear of losing his place, the reason of the rule would be met, and he should be declared free from culpability, unless plaintiff recklessly exposed himself to manifest peril, or

chose to subject himself to danger when another [and a] safe mode of discharging his duty was open to him."

Judge Holmes of the United State Supreme Court expressed a like opinion while upon the Massachusetts Supreme Bench in Mellor v. Merchants' Mfg. Co., 150 Mass. 362, where he says: "It may be that a case like Thomas v. Quartermaine comes very near the line; because, if the servant is acting within the scope of his regular employment, or in obedience to special orders, the fear of losing his place may take away his choice so far that he cannot be said freely to take the risk upon himself."

While the respondent was not by direct words ordered to continue in the performance of his duties in the absence of the post, yet the language of Sturges addressed to him when he complained that he thought it dangerous to work as a catcher without the post, was more emphatic than if he had so ordered respondent to continue his work. In substance, he told the respondent that others worked there without the post, and if he did not wish to do so he knew what he could do. That language of course meant that respondent must either continue his work without the post or he would have to throw up his job.

Now, if we apply the rule before stated, which is so well settled in this State and elsewhere, we must hold that respondent did not voluntarily assume the perils caused by the absence of the post, and that his conduct in remaining at his post of duty under the circumstances detailed in the evidence, was not such as to have warranted the trial court in declaring as a matter of law that he was guilty of such contributory negligence as would bar his right of recovery. Under the evidence disclosed by this record, the court should have submitted, under proper instructions, the question of contributory negligence to the jury.

Because of the errors before mentioned, we are clearly of the opinion that the action of the circuit

court in giving the peremptory instruction on behalf of the appellant company was reversible error, and for that reason that court properly sustained respondent's motion for a new trial.

IV.   It is finally insisted by counsel for appellant Sturges, that the action of the trial court in giving the peremptory instruction in his behalf was proper, even though it should be conceded or held that said action of the court was erroneous in so far as it related to the appellant company, and for that reason the subsequent action of the court in granting a new trial as to him was erroneous.

This insistence is predicated upon the contention that he was an employee and foreman of the appellant company, having had charge of the milling department, and that the evidence fails to show that he was guilty of any positive wrong or malfeasance toward respondent.   If that contention is true, then, clearly, Sturges would not be liable to respondent, for the law is well settled in this state that the foreman is not liable in damages for personal injuries sustained by a servant of the master in consequence of the foreman's non-feasance or mere neglect of duty.   [McGinnis v. Railroad, 200 Mo. 347; Harriman v. Stowe, 57 Mo. 93; Edge v. Railroad, 206 Mo. 471.]

The difficulty with this contention of appellant Sturges is, the evidence not only tends to show that he was guilty of misfeasance toward respondent, but also that he was an independent contractor in manufacturing the iron bars mentioned in the evidence, and that in consequence of his negligence, respondent sustained the injuries complained of.   We will discuss this phase of the case under three subdivisions:

First.   There was evidence introduced which tended to show that Sturges ordered respondent to perform his duties as catcher or quit his job, when informed of the existence of the peril caused by the absence of the protecting post mentioned in the evidence.   So order-

ing respondent into such a place of danger, if it was a dangerous place, was a positive wrong or misfeasance on the part of Sturges, even though it be conceded that he was not an independent contractor, but simply an employee representing the appellant company in the mill department. For that wrong, if wrong it was, he is jointly liable with the company to respondent for the injuries sustained by him in consequence thereof. [Harriman v. Stowe, supra; Edge v. Railroad, supra; McGinnis v. Railroad, supra.]

Second. If Sturges was an independent contractor, manufacturing the bars mentioned, as there was evidence tending to show, then he would be liable to respondent if the jury should find that it was true, as the evidence further tended to prove, that the piles of iron of which the billets were made were negligently constructed.

Third. If Sturges was such independent contractor, and he negligently failed to trim the ends of the bars when needed, as there was evidence tending to show, and in consequence thereof the bar which injured respondent caught in the rollers, and in consequence thereof he was injured, then he would be liable in this cause. This would be true whether the shears were out of order or not, for the reason that he had no right to run a bar in that condition through the rollers.

In passing it might be well to state that, if Sturges was an independent contractor, as contended by appellant company, then it would not be liable to respondent for any injuries sustained by him in consequence of the facts mentioned in subdivisions two and three, for the reason that they were caused by acts over which the company had no control.

We are, therefore, of the opinion that the court properly granted a new trial as to Sturges also.

For the foregoing reason the judgment should be and the same is hereby affirmed. All concur.