JOSEPH C. THOMAS, Respondent, v. ATLAS PORT-
LAND CEMENT COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed December 5, 1922.

MASTER AND SERVANT: Personal Injuries: Negligence: Contributory
Negligence: Obeying Orders of Master: Danger Obvious and Immi-
nent: Servant Continuing to Work: Recovery Barred. In an action
for damages by a carpenter injured while engaged in assisting
in putting on fresh painted sheets of iron on a roof "bucking
rivets," one of the men having slipped and a rivet struck plain-
tiff in the eye causing the loss of sight, where the evidence shows
conclusively that plaintiff fully realized the danger to which he
was subjecting himself; knew that it was imminent; fully under-
stood and appreciated it; had had prior thereto on the same morn-
ing of the injury to his eye, two of his front teeth knocked out
under the same circumstances; informed his foreman that the
position in which he was working was identical with the position
of a man who places himself in front of another and permits the
other to shoot at him with a 22 rifle, and he continued at the
work, and there was no promise by the master of any relief or
change in conditions, *held* under the conceded facts plaintiff was
guilty of contributory negligence as a matter of law barring his
right to recovery.

Appeal from the Hannibal Court of Common Pleas.—
*Hon. Charles T. Hays,* Judge.

REVERSED.

*Geo. A. Mahan* and *Dulany Mahan* for appellant.

*Eby & Hulse* for respondent.

(1) The trial court committed no error in overruling
the defendant company's demurrers to the evidence, for
the reasons: (a) Because the evidence clearly shows
that the using of the freshly painted sheets of tin was
the proximate cause of the plaintiff's injury. (b) Be-
cause the evidence in the case does not show that plain-
tiff was guilty of contributory negligence as a matter of

law. Jewell v. Bolt & Nut Company, 231 Mo. 176; Wendt v. Zitlosen Mfg. Co., 229 S. W. 1107; Dakan v. Chase, 197 Mo. 267; Stephens v. Hannibal & St. Joseph Ry. Co., 96 Mo. 207; 2 Thompson on Negligence, 975; 1 Labatt on Master and Servant, sec. p. 1241; Curtright v. Ruehmann, 181 Mo. App. 544; O'Brien v. Implement Mfg. Co., 141 Mo. App. 331; Rigsby v. Oil Well Supply Co., 115 Mo. App. 297; Depuy v. Railroad, 110 Mo. App. 123. (2) The trial court did not commit error in sustaining plaintiff's objection to the hypothetical question propounded to defendant's witness, Dr. U. S. Smith; said question appearing at page 88 of the printed record. The question propounded did not embrace all of the essential facts in evidence which were required to be submitted in a hypothetical question properly framed. Senn v. The Southern Ry. Co., 108 Mo. 142; Turner v. Haar, 114 Mo. 335; Burge v. Railroad, 244 Mo. 76. (3) The court did not commit error in giving plaintiff's instruction No. 3. (a) The use of the term "convicted" was proper. (b) Nor did said instruction purport to cover the entire case. (4) The evidence in the case shows that plaintiff's injuries were caused by the negligence of defendant company and the concurring negligence of one of defendant company's foremen; and the fact that there may or may not have been negligence on the part of defendant Hubbard does not relieve the defendant company from liability.

NIPPER, C.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff while in the employ of defendant at one of its plants or factories used for the manufacture of cement, at Ilasko, a little village near Hannibal, in Ralls County, Missouri. Plaintiff received the injury which it is alleged caused the loss of his left eye on January 17, 1919, while he was employed by defendant as a carpenter, and engaged, together with three other carpenters, Gamboll, Snedigar, and Crutchlow, in the work of putting a new metal roof on a building occupied by defendant. The general fore-

man of the carpenter gang of which plaintiff was a member was named Hubbard, who was joined with the appellant here as one of the defendants in the court below. Crutchlow, who was working with defendant, was "straw boss," and was in immediate charge of the three carpenters, including plaintiff, who were doing this work. This roof was being constructed of sheets of tin or corrugated iron about thirty-two inches wide, and from six to nine feet in length. Said sheets were being lapped over at the edges, and riveted together with metal rivets. There were from ten to twenty carpenters in the general carpenter's gang, but only four were engaged in the particular work in which plaintiff was engaged at the time he received his injury. The manner and method of putting on this roof was for two men to sit immediately underneath the roof on a swinging scaffold made by using a board about twelve inches wide, tied by wires to the beams of the roof. This swinging scaffold was close up to the roof—so close that the men sitting thereon could not always sit entirely erect. One of the men on the scaffold tied wires. In this particular case it was Gamboll. The other, who was plaintiff, was engaged at the time in what is termed in the evidence here as "bucking rivets." This was done by sitting on the swinging scaffold immediately underneath the roof, and with an iron bar twenty or twenty-four inches long and one and a quarter inches thick, flattened on one end, a metal rivet about the size of a 22 rifle bullet, with the sharp end up, would be placed on the head of this iron bar, and then pressed or held up against the sheets of tin, after which the man on the roof would be called upon to strike a blow with a hammer at a point about eight inches from the rivet which had been driven immediately prior thereto. The man on top of the roof did not know exactly where the rivet was placed beneath the roof, but only estimated it by the fact that they were placed about eight inches apart. When the blow was struck it would bring the rivet through, and permit the man on the roof to flatten

it so as to hold the roof in place, and prevent the seepage of water through the roof.

Plaintiff had been working at this job several days before his injuries. He had been engaged in the carpenter trade for several years, and was about fifty-four years of age. It is alleged that defendant was negligent in ordering and requiring plaintiff to assist in the work of riveting said roof while the paint on the tin sheets used thereon was wet and fresh, thus causing the rivets to be more liable to slip or fly from their position and injure plaintiff.

Plaintiff had frequently complained to defendant that such work was dangerous, but he received no assurance of any kind that the condition would be remedied, and on the morning he received his injury, he informed Crutchlow, the "straw boss," that, owing to the fact that they were on that morning using freshly painted sheets of roofing, it was very dangerous. He was told, in substance, that it was dangerous, but that it was the order to complete the job without delay, and he was given to understand that he would either have to do that, or quit his job. About a half hour after he began work that morning, one of the rivets which plaintiff was holding in place, on being struck a hammer blow from the top, slipped, and in its flight hit plaintiff in the mouth and knocked out two of his teeth. After his teeth were knocked out, plaintiff went on top of the roof, and, after staying there for about twenty or thirty minutes, he went back to his scaffold and again began "bucking rivets." At about ten or eleven o'clock a. m., on January 17, 1919, and on the same morning his teeth were knocked out, a rivet which he was holding against the roof was struck from above by the man on the roof, slipped, and hit plaintiff in the eye, injuring it in such a manner as to cause the loss of the sight thereof. As to whether or not this caused the loss of sight is a controverted question, but there is ample evidence, as appears from the testimony of the eye specialist who treated him later, from which

the jury could reasonably infer that such injury caused the loss·of the sight of plaintiff's eye.

Plaintiff testified that the danger in which he was placed from the flying rivets was "just like holding up a 22 rifle and letting them shoot at you." He so informed defendant's foreman, who admitted that he knew it was dangerous, but it had to be done. It is a controverted fact as to whether or not plaintiff, in performing this work in the usual and ordinary way, should lower his head immediately after placing the rivet against the roof and calling to the man above to strike. Plaintiff and the "straw boss," Crutchlow, stated that it was necessary to watch the operation to see that the rivet did not slip from its position, while witnesses for defendant testified that the usual and ordinary way was to drop the head after giving the signal to strike, so as to protect the head and eyes. It appears that when dry roofing was used, about one rivet in eight or ten would fly from the head of the iron bar when it was struck, but that when wet sheets were used, as was the case here, about one in three or four would fly from the position in which they were held against the roof.

Defendant offered a demurrer to the evidence, which was overruled.

Plaintiff recovered judgment for $2,500, and defendant appeals, urging several grounds for reversal of this judgment, the principal one being that the court erred in not sustaining its demurrer to the evidence. Thus the question with which we are first confronted is, was plaintiff guilty of contributory negligence as a matter of law, such as to bar his right to a recovery, on the theory that the danger attending the work in which he was engaged was so obvious and imminent, and fully appreciated by him to the extent that, notwithstanding he was performing his work under direct orders of the master, he should have refused to continue in such employment.

The rule as to the master's liability, under such circumstances as are detailed in evidence in this case, is reviewed at length in such cases as Jewell v. Bolt & Nut

211 M. A.—10

Co., 231 Mo. 176, 132 S. W. 703, and Fogus v. The C. & A. Ry. Co., 50 Mo. App. 250. Both of these cases review the authorities touching this question at considerable length, and each of them has been cited many times approvingly by the appellate courts of this and other states.

In Fogus v. The C. & A. Ry. Co., supra, l. c. 261 and 262, this court made use of and approved the rule as announced in 2 Thompson on Negligence, 975, wherein it is stated:

"There may be cases where the servant is ordered to do a particular act, and the order is so unreasonable, and the act so manifestly dangerous to life and limb, that the court, on the evidence, should declare the servant guilty of negligence in obeying the order of the master, and should direct a nonsuit. The general rule, however, is, that the question is one for the jury. It cannot be said that the servant and master are on an equal footing even where they have equal knoweldge of the danger. To so say is against common experience, and in disregard of the fact that the servant occupies a position subordinate to the master; the primary duty of the servant is obedience. It does not follow, because the servant could justify a disobedience of the order, that he is guilty of negligence in obeying it."

In Jewell v. Bolt & Nut Co., supra, l. c. 203, our Supreme Court quoted with approval the following language from Labatt on Master & Servant:

"If a danger is not so absolute or imminent that injury must almost necessarily result from obedience to an order, and the servant obeys the order and is injured, the master will not afterwards be allowed to defend himself on the ground that the servant ought not to have obeyed the order."

This same doctrine was applied in Shortel v. City of St. Joseph, 104 Mo. 114, 16 S. W. 397, in which other cases in this State announcing a similar rule were referred to. In the last-named case, however, it was held that, even "though the servant is ordered into a place of danger, still, if the danger is so obvious that a prudent

person, though acting in the capacity of a servant, would not obey the order, then he will be guilty of contributory negligence which will defeat a recovery.''

After a careful consideration of the facts in evidence here, we are inclined to the view that defendant's demurrer should have been sustained, because all the evidence shows here conclusively that plaintiff fully realized the danger to which he was subjecting himself; he knew that it was imminent; and fully understood and appreciated it. He informed the foreman that the position in which he was working was identical with the position of a man who places himself in front of another and permits the other to shoot at him with a 22 rifle. He had had, prior thereto, and on the same morning, two of his teeth knocked out while engaged in the same employment and under the same circumstances which caused him to be struck in the eye. He does not even contend here that he thought by being careful he might continue in such employment in safety. There could be no such contention, when, on the same morning, prior to this injury, he had had two teeth knocked out, and acknowledged that he was in the same danger that a man would be in who was being shot at with a rifle. That the danger was threatening, imminent, and immediate, was apparent to him, he so stated, and all the facts bear him out. There was no promise by the master of any relief or change in conditions. In McDermott v. The Hannibal & St. Joseph Railway Co., 87 Mo. 285, l. c. 295, the rule is thus laid down which we consider applicable to this case:

''A servant is not, under all circumstances, and at all hazards, bound to obey the order of his master. Obedience to an order may so manifestly jeopardize the safety of the servant as not only to justify but to demand his disobedience. No servant can voluntarily place himself in a position in which it is more than likely that he will be injured and recover damages from his master, if he had time to deliberate, and, with knowledge of the peril, took the risk.''

Could it be said that a reasonably prudent man, working under such conditions and in such a position as plaintiff was working on the morning he was injured, after having had two teeth knocked out as a warning and demonstration of the danger of the work in which he was engaged, and with a full and complete realization that he was in the position of a man being shot at with a 22 rifle, would have continued in such employment because the master had directed him to do so? We think not.

We appreciate fully the fact that the master's conduct is not laudable or commendable when he directs his servant to perform dangerous work for him, and then when such servant is injured while obeying his command such master comes into court and says:

"I was negligent, but my servant should have disobeyed my orders, and, not having done so, I am not liable."

The necessity of the struggle for existence tends very strongly to deprive the servant of that liberty, independence, and freedom of action which the master has under such circumstances. Yet, where as here, the facts are such that reasonable minds cannot differ upon the proposition but that the danger was obvious, imminent, threatening, and almost sure to happen, and plaintiff, according to his own testimony, fully realized and appreciated the full extent thereof, then he is not entitled to recover.

Plaintiff has our sympathy, but such sympathy must not be permitted to sway our judgment. Under the well established principles of law, and the conceded facts of this case, defendant's demurrer should have been sustained. [Shortel v. City of St. Joseph, supra; Roberts v. Missouri & Kansas Telephone Co., 166 Mo. 370, 66 S. W. 155; Lucey v. Hannibal Oil Co., 129 Mo. 32, 31 S. W. 340; Fugler v. Bothe, 117 Mo. 475, 22 S. W. 1113; McDermott v. The Hannibal & St. Joseph Railway Co., supra.]

In this view of the case, it becomes unnecessary to note other alleged errors presented by defendant.

The Commissioner recommends that the judgment be reversed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed. *Allen, P. J., Becker* and *Daues, JJ.*, concur.